# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SOUTHERN RAILWAY CO. V. NEWTON'S ADMINISTRATOR.

### March 12, 1908.

1. MASTER AND SERVANT—*Safe Place—Notice of Danger—Railroads—Independent Contractor—Case at Bar.*—If a railroad company knows, or by the exercise of ordinary care ought to know of defects in a path by the side of its track along which its servants have to pass, and of the increased danger to which they will be thereby exposed, in ample time to guard against it, and fails to do so, or to warn its servants of the danger, and in consequence thereof a servant is injured while in the discharge of his duties, the company is negligent, and is responsible for the consequences of its negligence, although it may be at the time dealing with an independent contractor as to improvements to be made to the track. In the case at bar the railroad company retained such control over a large part of the work to be done by a contractor that it is doubtful if the latter can be said to have been an independent contractor; but, even if he was, the company is liable under the circumstances of this case.

2. MASTER AND SERVANT—*Contributory Negligence of Servant—Question for Jury—Railroads.*—Whether a servant engaged in uncoupling a car from a moving train in the usual manner, and who is injured in consequence of falling into an open and obvious trench by the side of the track, is guilty of such negligence as will bar his recovery of the master is a question of fact for the jury acting under proper instructions from the court, and their verdict will not be disturbed where there is evidence to support it.

Error to a judgment of the Circuit Court of Norfolk county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. L. Williams* and *Robert B. Tunstall,* for the plaintiff in error.

*Jeffries & Lawless* and *E. P. Buford,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This writ of error is to a judgment in favor of the defendant in error, in an action brought by him to recover of the plaintiff in error damages for having negligently caused the death of his intestate.

The record shows that the deceased, R. H. Newton, a young man twenty-one years of age, employed by the Southern Railway Company as brakeman, met his death on the 17th day of January, 1905, while endeavoring to uncouple a car from a freight train owned and operated by the defendant company. The time of the accident was early in the morning, and the weather was "hazy, cloudy like, and foggy." The place of the accident was near "Boone," a switching station in the county of Norfolk. While engaged in an attempt to work the handle bar of the brake-rod for the purpose of detaching a car, the train was backing and he running to keep up with it. Before he succeeded in uncoupling the car, he stepped into a trench or excavation, technically called a "lead out," which had been made a few days before, without his knowledge, immediately contiguous to the rails and cross-ties, and in the path he was required to traverse while performing his duty. The unexpected plunge into this excavation caused him to fall under the wheels of the moving train, where he was immediately crushed to death.

This excavation was six feet in length, running parallel with the rails. It was four and one-half feet wide, and nine and one-half inches deep and had piled around it the excavated dirt to the height of twelve inches above the surface level. It had been dug for the purpose of putting therein a dwarf, or target,

signal as a part of an interlocking switch system which was being installed by the Union Switch and Signal Company, under a contract between it and the defendant railway company.

The chief contention of the plaintiff in error is that, under the terms of this contract, the Union Switch and Signal Company was an independent contractor, and that the railway company was, therefore, not responsible in this action.

The contract mentioned is in writing and filed with the record. It is plainly a joint contract, under which both parties agreed to perform certain parts of the work necessary to the installation of the contemplated "interlocking switch system." The railroad company assumed to do all track work, have all switches, derails, etc., ready to be connected; to do all preliminary grading and prepare the surface of the ground where the connections were to be run. Before the Union Switch Company began its work, the defendant was to do all blasting, to provide proper drainage, to provide space under the tracks for the "lead out" to cross, etc. The testimony of the foreman of the switch company, who was introduced by the plaintiff in error, shows that it was the duty of the railway company to 'dig the "lead out" or excavation complained of in this case, and to box it with lumber when completed. It is further shown by this witness that it was the custom to cover the "lead outs," or trenches, with boards when they are not filled up. This was not done in the case at bar. The railway company certainly retained control of a large part of the work to be done under this contract, and whether under such circumstances the Union Switch Company can be said to be an independent contractor, in the legal sense of that term, may well be doubted. If, however, it be assumed that the Union Switch Company was an independent contractor, it would not, under the circumstances of this case, relieve the defendant from its duty to provide a reasonably safe place for its servants to work. It was not only the duty of the defendant, as shown, to dig the trench which caused the death of plaintiff's intestate, and to box it with lumber when completed, but the record shows that it knew, or by the exercise of

ordinary care could have known, of the defect in the path of the deceased and the increased danger to which its servants were thereby exposed, in ample time to have guarded them against it. The signal foreman of the defendant company testifies that it was his duty to inspect this work as it progressed, and that it was also the duty of the regular trackman to observe the conditions existing along its way and at its stations when these contracts were being carried out, as well as at other times.

The railway company was clearly negligent in this matter; and it is responsible for its own negligence and that of its agents and employees, although it may be at the time dealing with an independent contractor.

This question was involved in the case of *Va. Cent. R. Co.* v. *Sanger,* 15 Gratt. 230. Judge Daniel, speaking for a unanimous court, in that case says: "In the view which I take of the case, the inquiry, whether Brown and Chickard were contractors for the work in which they were engaged, is not material. For if the company, by its officers charged with the duty of guarding the track against obstructions, saw or might by the exercise of proper vigilance have seen that Brown and Chickard were placing the stone in such close proximity to the track, or otherwise disposing of the material used in the work in a manner calculated to excite in the minds of cautious persons fears and apprehensions for the safety of the track, it was then its duty to use the utmost care and diligence to provide against the danger."

The difference of care due from the railroads in the two cases was one of degree only. In the case cited the plaintiff was a passenger and the defendant owed him, as stated by the learned judge, the utmost care and diligence to provide against the danger. In the case at bar the plaintiff's intestate was a servant, and, therefore, the railway company owed him the duty of ordinary care to protect him against the danger.

The right of the plaintiff to recover in this case is denied upon the further ground, that the deceased was guilty of contributory negligence. The basis of this contention is that the

trench complained of was open and obvious, and that if the deceased had used ordinary care and prudence in looking out for his own safety, he would have seen and avoided the danger.

The contributory negligence of the deceased was, under all the facts and circumstances of the case, a question for the jury. It was submitted to them under the following instruction, given at the request of the defendant company:

"The court instructs the jury that it was the duty of the deceased, R. H. Newton, while attending to his duties as brakeman, to use ordinary care and prudence in looking out for his own safety, and that if they believe from the evidence that the said R. H. Newton came to his death on account of stumbling in a trench dug for the Interlocking Signal Plant, and further believe from the evidence that the said trench was open and obvious, and that the said Newton could have seen and avoided the same by using ordinary care and prudence, and that his failure so to do contributed to the accident, then the plaintiff would not be entitled to recover, and they should find their verdict for the defendant."

Early on a January morning, the weather being "foggy and hazy," the deceased was engaged in performing a duty devolved upon him by the defendant company. The undisputed evidence is that he was endeavoring to uncouple a car from a moving train, and that he was discharging that duty in the usual way. Under orders he was occupied with a duty which necessarily compelled the attention of his eyes and hands, and required him to run beside the moving train in the discharge of such duty. It is not contended that he had notice of the changed and unusual condition of the ground over which he was accustomed to pass, or that there had been any opportunity for him to learn of the change. The sole contention is that, the excavation being open and obvious, he should have seen and avoided it.

This court, in *Cheatwood's Case,* 103 Va. 356, 49 S. E. 489, cites with approval Sher. & Red. on Neg. Vol. 1, sec. 216, where

the law on this point is stated as follows: "It may fairly be presumed that a servant knows the condition of materials, machinery and appliances which he has a constant opportunity to inspect; but no such presumption arises where he has no such opportunity. A locomotive engineer, conductor or train servant of any kind, is not presumed to be familiar with the condition of the track; and therefore he does not as a matter of law, assume risks arising from a defective or negligent construction of the track, or of the ties under the track, even though such defects existed when he entered upon his employment. And no servant is presumptively chargeable with other peculiar or unusual state of things. Reasonable time must be allowed a new servant to become acquainted with the surroundings, and an old servant to learn of changes in the situation. Servants are presumed to be aware of the defects which are perfectly obvious to their sight, and the danger of which is obvious to any person of their mental capacity. But to charge them with notice on this ground, the defect and danger must be unquestionably plain and clear, so that if they did not see it they must necessarily have been in fault."

Applying this rule to the evidence in this case, the jury were well justified in finding that the plaintiff's intestate was not guilty of contributory negligence.

In disposing of the questions already discussed, we have sufficiently answered the objections taken to the action of the circuit court in giving and refusing instructions.

We are of opinion that the case was fairly submitted to the jury and their verdict was properly allowed to stand.

The judgment complained of must be affirmed.

*Affirmed.*