# Richmond.

## WALTON, WITTEN AND GRAHAM v. MILLER'S ADMINISTRATRIX, AND MILLER'S ADMINISTRATRIX v. NORFOLK AND WESTERN RAILWAY CO.

### January 14, 1909.

1. NEGLIGENCE—*Parties—Joint Tort Feasors.*—When the negligence of two 'or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert of action. In the case at bar, the declaration alleges that the negligence and lack of ordinary care of an independent contractor and of a railroad company were the efficient and proximate cause of the death of the plaintiff's intestate, and this is sufficient to warrant their joinder as defendants in an action for his death, when the details of the negligence are specified.

2. NEGLIGENCE—*Sudden Peril.*—One who is placed in a position of sudden peril by the negligence of another, without contributory negligence on his part, is not liable for errors of judgment in endeavoring to escape the peril.

3. RAILROADS—*General Contractors—Blasting Near Track—Duty to Employees of Railroad Company.*—General contractors engaged in blasting and excavating in close proximity to a railroad track in daily use owe to the employees of the railroad company the twofold duty of using ordinary care not to obstruct the track, and, in the event they do obstruct it, to use like care to warn such employees of the obstruction in time to enable them, by the exercise of ordinary care, to protect themselves from danger, and the failure to discharge either duty constitutes actionable negligence.

4. RAILROADS—*Obstructions on Track—Duty of Flagmen.*—If an engineer of a locomotive engine on approaching a flagman gave the usual and ordinary signal in answer to the flag, and the flagman understood the signal as such answer, he had the right

to presume that the engineer saw the flag and answered the warning and to discontinue the flagging, and this would bar a recovery for the engineer's death occasioned by not heeding the warning, although he did not see the flag or intend to answer it; but if the same signal was also used in response to communications from the conductor, and the flagman knew, or, by the exercise of ordinary care, ought to have known, that the signals given by the engineer were not in response to his flag, but to communications from the conductor, he was not justified in discontinuing flagging, and recovery is not barred.

5. Appeal and Error—*Verdict Supported by Evidence.*—The evidence in the case at bar, viewed as upon a demurrer to the evidence, fully sustains the verdict of the jury which was approved by the trial court, and the verdict cannot be disturbed on appeal.

6. Railroads—*Safe Track—Independent Contractors—Master and Servant.*—A railroad company is liable for the death of one of its employees occasioned by the negligent obstruction of its roadbed by an independent contractor employed to double-track its road. The duty to keep its track in a reasonably safe condition is non-assignable, and it cannot escape liability for the neglect of duties imposed upon it by law, in the interest of the safety of its servants and the public, by delegation to an independent contractor, or otherwise.

7. Appeal and Error—*Joint Tort Feasors—Contribution—Effect of Dismissal as to One.*—While joint tort feasors are jointly and severally liable, no right of contribution exists among them, and neither has a remedy over against the other. If they are proceeded against jointly, the plaintiff may dismiss or discontinue his action as to one defendant, without affecting his rights against the other. If judgment is against one, the other cannot have a writ of error to review it.

Error to a judgment of the Circuit Court of Bedford county in an action of trespass on the case by *Miller's Administratrix* v. *Walton, Witten and Graham* and *Norfolk and Western Railway Co.* There was a judgment in favor of the plaintiff against Walton, Witten and Graham, to which they assign error, and in favor of the Norfolk and Western Railway, to which the plaintiff assigns error. The two writs of error were heard together.

In the first case judgment

*Affirmed.*

---

---

In the second case judgment

*Reversed.*

The opinion states the case.

*Harrison & Long,* for Walton, Witten and Graham.

*Lee & Howard* and *Whitehead & Whitehead,* for Miller's Administratrix.

*S. Griffin,* for Norfolk and Western Railway Co.

WHITTLE, J., delivered the opinion of the court.

Though these cases are before us on different writs of error, they arose out of the same accident, were made the subject of one action, and were jointly submitted on appeal.

The object of the suit is to recover damages from the plaintiffs in error, Walton, Witten and Graham, and also from the defendant in error, the Norfolk and Western Railway Company, for the death of the plaintiff's intestate, William J. Miller, which is ascribed to the negligence of both defendants.

The jury found a verdict for the plaintiff against Walton, Witten and Graham, and assessed her damages at $7,500, but returned a verdict for the Norfolk and Western Railway Company; and judgment was rendered accordingly.

The first assignment of error by Walton, Witten and Graham is founded upon the court's action in overruling the demurrer to the declaration. On that assignment it is contended that the first and second counts of the declaration violate the rule of pleading which requires that the declaration in a joint action against tort-feasors must charge a joint tort; and, moreover, that inasmuch as the third and fourth counts allege a joint tort there is a misjoinder of counts. It is furthermore insisted that Walton, Witten and Graham did not owe plaintiff's intestate

the same duty that was owing to him as an employee from the Norfolk and Western Railway Company, and for that reason the defendants are not suable jointly.

The gravamen of the first and second counts, indeed of all the counts stated in varying form, is that the railway company owned, maintained, and operated a line of road, extending, in part, between the cities of Roanoke and Lynchburg, in the State of Virginia; that with the view of widening its roadbed, for the purpose of double-tracking, the company employed Walton, Witten and Graham, a firm of railroad contractors, to excavate and remove large quantities of earth and rock along its right of way, for the distance of one mile in a westerly direction from Montvale, a station on the railroad; that, in the conduct of the work, heavy blasts were frequently made by the contractors, with dynamite and other high explosives, the effect of which was to cast large quantities of earth and rock upon the adjacent track; that it was the duty of the contractors to exercise reasonable care and diligence to warn employees of the railway company, engaged in operating and running engines and trains of cars over its track in the vicinity of the work, of such blasts, by the proper use of flags or torpedoes, or other reasonably practicable and adequate methods. A like duty is also imputed to the railway company, and it is alleged that, in consequence of the careless and negligent failure of the contractors and of the railway company to give such reasonable and timely notice, a freight train upon which plaintiff's intestate was employed as a locomotive engineer collided with earth and rock thrown upon the track by one of these blasts, and plaintiff's intestate was killed.

It will be observed that the negligence attributed to both defendants is alleged to have produced a single indivisible injury; and where such is the case the rule is that they are, in contemplation of law, joint tort-feasors, though acting independently of each other.

The principle is thus stated in 1 Shear. & Red. on Neg., section 31: "If the injuries caused by the concurrent acts of two persons are plainly separable, so that the damage caused by each can be distinguished, each would be liable only for the damage which he caused; but if this is not the case, all persons who contribute to the injury by their negligence are liable jointly and severally for the whole damage."

Again, at section 122, it is said: "If several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform or for performing it negligently. Persons who co-operate in an act directly causing injury are jointly and severally liable for its consequences, if they acted in concert, or united in causing a single injury, even though acting independently of each other."

Judge Cooley, in his work on Torts, states the doctrine as follows: "In respect to negligent injuries, there is considerable difference of opinion as to what constitutes joint liability. No comprehensive general rule can be formulated which will harmonize all the authorities. The authorities are, perhaps, not agreed beyond this, that where two or more owe to another a common duty and by a common neglect of that duty such other person is injured, then there is a joint tort with joint liability. The weight of authority will, we think, support the more general proposition, that when the negligence of two or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concert of action." 1 Cooley on Torts (3rd ed.), p. 246. To the same effect see, 15 Enc. Pl. & Pr., 557, 558; *McKay* v. *So. Bell Tel. Co.*, 111 Ala. 337, 19 South. 696, 56 Am. St. Rep. 60, 31 L. R. A. 589; *Osage City* v. *Larkin*, 40 Kan. 206, 19 Pac. 658, 2 L. R. A. 56, 10 Am. St. Rep. 186; *Elec. Ry. Co.* v. *Shelton*, 89 Tenn. 423, 14 S. W. 863, 24 Am. St. Rep. 614; *Gulf, &c. Ry. Co.* v. *Mc-Whirter*, 77 Tex. 356, 14 S. W. 26, 19 Am. St. Rep. 755;

*Cuddy* v. *Horn,* 46 Mich. 596, 10 N. W. 32, 41 Am. Rep. 181, 182; *Transfer Co.* v. *Kelly,* 36 Ohio, 86, 38 Am. Rep. 558; *Flaherty* v. *M. &c. Ry. Co.,* 39 Minn. 328, 40 N. W. 160, 1 L. R. A. 680, 12 Am. St. Rep. 654.

All the counts contain the common allegation that the negligence and lack of ordinary care on the part of Walton, Witten and Graham, and the negligence and lack of ordinary care on the part of the Norfolk and Western Ry. Co., were the efficient and proximate cause of Miller's death; and that, under the authorities, renders both liable as joint tort-feasors, "although there was no common duty, common design, or concert of action" between them.

The second error assigned by Walton, Witten and Graham relates to giving and refusing instructions.

Thus the court refused an instruction which told the jury that Miller was under as high a duty to protect himself as the defendants were to protect him, and if they believed from the evidence that he could, by the exercise of reasonable care, have saved himself by getting off the engine before the collision occurred, and failed to do so, they must find for the defendants, although they may have believed that the defendants were negligent in giving him no notice of the obstruction. But the court, in lieu thereof, gave an instruction embodying the principle, that if the jury believed from the evidence that Miller was placed in a position of sudden peril by the negligence of the defendants, without contributory negligence on his part, he could not be held responsible for error of judgment with respect to effecting his escape, occasioned by such sudden peril, which instruction also contained the converse of that proposition.

The modification of the instruction, as originally offered, is objected to on the theory that there was no evidence to support it. But, as we shall see presently, the evidence was ample for that purpose.

The ground of exception to the next instruction is that it imposed upon the contractors the twofold duty of exercising ordinary care not to obstruct the track, and, in the event they did obstruct it, to use like care to warn plaintiff's intestate of such obstruction in time to enable him, by the exercise ot reasonable care, to protect himself from danger, and that the failure to discharge either duty would constitute actionable negligence. Certainly the law devolved both duties upon the contractor. Really the second is corollary to the first.

The next instruction told the jury that if they believed from the evidence that the flagman displayed his flag at a point where Miller could have seen it, if he had been on the lookout, in time to have prevented the collision, and while so displaying the flag Miller sounded two short blasts of the whistle, which was the proper and usual signal in answering the flag, and was so understood by the flagman, he had the right to assume that Miller saw the flag and answered the signal, and to discontinue flagging; and that this would bar a recovery, although Miller did not see the flag or intend to answer it. To which instruction the court added: But if the flagman knew, or, by the exercise of ordinary care, ought to have known, that the blasts were not in response to his flag, but to signals from the conductor, he was not justified in discontinuing flagging.

It appeared that two short blasts of the whistle was an answer to certain signals from the conductor as well as an answer to the flagging signal. In point of fact, the blasts in question were in response to the former and not to the latter, and the evidence of the plaintiff shows the relevancy and propriety of the court's addendum to the instruction.

The third assignment of error is to the refusal of the court to set aside the verdict against Walton, Witten and Graham as contrary to the law and the evidence. In dealing with that assignment, we shall content ourselves to give in brief outline

the case made for the plaintiff, as upon a demurrer to the evidence.

It appears that for the distance of four miles west to the point of accident, the railroad traverses the eastern slope of the Blue Ridge Mountain on a heavy descending grade; that at the time of the accident a freight train of the railroad company, consisting of thirty odd loaded coal cars drawn by two engines was going east, at the rate of eight or ten miles an hour. The train was running under slow orders in approaching the part of the track near which the contractors were at work. These orders forbade a rate of speed in excess of twelve or fifteen miles an hour, and imposed upon the engineman the duty of keeping a sharp lookout for obstructions on the track and for flagging by the contractors, and to have his train under full control to stop promptly on signal. Plaintiff's intestate, as engineman on the front engine, had control of the air-brakes, and Ellett was in charge of the rear engine. Proper flagging consists in waving a flag across the track on the right side of the approaching train (the engineman's seat being on that side of the cab), in such manner as to attract attention, and at such distance from the point of danger as to enable the engineman to stop his train in time to avoid it.

Preparatory to setting off a blast, it was customary for the contractors to timber the contiguous track with cross-ties to prevent damage to the rails from falling rock. Usually, before this timbering was commenced, which in itself obstructed the track, flagmen were sent east and west to protect trains; the ordinary place for flagging east-bound trains being west of Brugh's crossing, which is 3,000 feet west of the scene of the accident. On that particular occasion, however, the flagman, a negro employed on the work, assisted in timbering the track, and was afterward ordered out with his flag. He set off on the right hand side of the track going west, on a run; and had proceeded about 1,500 feet with the flag rolled up when the train

ran down upon him. Thereupon, he rushed across the track in front of the engine and up the bank on the opposite side, with his flag partly furled, as the front engine passed him. He was not seen by Miller, but was discovered by Ellett after he had crossed the track. Ellett instantly blew down-brakes, and Miller at once responded and did all in his power to stop the train. When he ran into the obstruction, sparks were flying from the locked wheels, the reverse lever was pulled entirely back against the pin, and the throttle was wide open, and the speed of the train had been reduced to three and a half or four miles an hour. The rear engine ran into the tender of the front engine and Miller was killed by the impact.

It also appeared that the train in question could hardly have been stopped with safety and certainty in less than a half a mile, or 2,640 feet.

It is needless to say, that the verdict of a jury, with such evidence to sustain it, sanctioned by the trial court, cannot be disturbed on appeal.

It only remains to notice briefly the exception to a line of instructions given by the court at the instance of the Norfolk and Western Railway Company, to the effect that, under the written contract between it and Walton, Witten and Graham, the latter were independent contractors, and that if they were well known railroad contractors of good reputation and standing, and the work to be done was lawful and not inherently dangerous, and was constructed by the firm under the contract, then the Norfolk and Western Railway Company would not be liable, though the death of the plaintiff's intestate was caused by the negligent failure of the contractors to give proper notice of the blast and of the obstruction occasioned thereby.

The railway company undertakes to justify that ruling on the authority of *N. & W. Ry. Co.* v. *Stevens' Admr.*, 97 Va. 631, 34 S. E. 525, 45 L. R. A. 367. In the latter case it was held not to be an essentially hazardous undertaking to substitute

a new railroad bridge for an old one without the interruption of traffic; that it was the general custom of railroads to let such contracts to independent contractors; and, if the company used due care in the selection of a reliable contractor, it would not be liable for the negligence of such independent contractor in the faulty construction of the bridge.

It is sufficient to observe that the *Stevens case* rests upon its own particular facts, which are essentially different from the facts in this case, and was not intended to impair the established principle that a railroad company cannot escape liability for the neglect of duties imposed upon it by law, in the interest of the safety of its servants and the public, by delegation to an independent contractor or otherwise. It is the settled doctrine in this State that such duties are non-assignable.

In this instance the work of the contractors was not upon the main line, but they were engaged in grading a roadbed for a double track, parallel to but disconnected from the original track over which the company was operating its trains. If it were competent for a railroad company, under such circumstances, to delegate to a contractor the duty of supervising and maintaining part of its track it could relieve itself of all liability, simply by deputizing its non-assignable functions to an independent contractor.

In *Virginia Central Ry. Co.* v. *Sanger,* 15 Gratt. 230, this court said: "It would seem to me to follow further that when a railroad company, while using its track for the carriage of passengers, engaged in a work to be done on its road, and in the immediate proximity of its track, negligence in the performance of which would, in the estimate and opinion of cautious persons, involve the hazard of obstruction to the passage of its cars, it would be just as competent for them, in the case of an accident to a passenger caused by an obstruction arising from negligence in the performance of such work, to show merely that they had placed the work in the hands of a contractor, and

that the obstruction was caused by the carelessness of one of his employees, as it would be for them, in the case of an accident to a passenger arising from want of care or skill in the management or conduct of the train, to show that such management and conduct had been let out to a contractor, and that the accident was due exclusively to the carelessness of one of his employees.    In neither case, I apprehend, could such a deputation by the company of its powers and duties to another shield it against the complaint of an injured passenger."

That case was followed in *Carrico* v. *W. Va. Central, &c. Ry. Co.,* 39 W. Va. 86, 19 S. E. 571, 24 L. R. A. 50, where it was held, that a railroad company could not divest itself of the duty of keeping its track in good and safe condition, free from obstructions, by the interposition of an independent contractor. See *Richmond, &c. Street Ry. Co.* v. *Moore,* 94 Va. 493, 27 S. E. 70, 37 L. R. A. 258; *Southern Ry. Co.* v. *Newton,* 108 Va. 114, 60 S. E. 625; *Borrow* v. *Kane,* 88 Fed. 197, 31 C. C. A. 452; *Barkman* v. *Pa. Ry. Co.* (C. C.), 89 Fed. 453; *Taylor, &c. Ry. Co.* v. *Warner,* 88 Tex. 642, 37 S. W. 868.

Our conclusion upon this branch of the case, therefore, is that though the lower court erred in giving these instructions, which practically absolved the railway company from liability for its own negligence with respect to obstructions on its track, for which error the judgment in its favor must be reversed, it is not an error of which Walton, Witten and Graham can complain; the rule being, that joint tort-feasors are jointly and severally liable, but that no right of contribution exists among them, or remedy over by one against the other.    Consequently, if proceeded against jointly, the plaintiff may dismiss or discontinue his action as to one defendant, without affecting his rights against the other.    *Staunton Mutual Telephone Co.* v. *Buchanan,* 108 Va. 810, 62 S. E. 928.

For these reasons the judgment in favor of Miller's administratrix against Walton, Witten and Graham is affirmed; but

the judgment on behalf of the Norfolk and Western Railway Company is reversed, the verdict of the jury as to that defendant set aside, and the cause remanded for further proceedings.

In first case

*Affirmed.*