Staunton.

## Matoaka Coal Corporation v. Clinch Valley Mining Corporation.

### September 20, 1917.

1. CONTINUANCES—*Discretion of Trial Court—Appeal and Error.*— A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case, and although an appellate court will review the action of the trial court, it will not reverse its judgment upon such motion unless plainly erroneous.

2. CONTINUANCES—*Discretion of Trial Court—Absent Witness— Case at Bar.*—A motion for a continuance by the defendant was based upon the absence of a witness largely interested in the defendant company, who had not been summoned as a witness. The case was called earlier in the term than counsel for defendant anticipated, but they had no reason to suppose that a trial would not be had during the term, and no steps had been taken to have the witness in readiness to attend. When the case was first called the witness was out of reach, and, so far as the record disclosed, the testimony of the witness would have been largely if not wholly cumulative and quite unlikely to have affected the result.

   *Held:* That the trial court did not abuse its discretion in refusing the continuance.

3. MINES AND MINERALS—*Lease—Forfeiture—Instructions.*—A mining lease provided for forfeiture if the lessee should cease to operate the mines for a period of three months, unless the delay was unavoidable and caused by circumstances beyond the control of the lessee. To excuse its failure to operate the mines, the lessee alleged a general strike at the mines and a mountain slide covering the tracks over which the coal had to be shipped. It appeared from the evidence that the lessee was practically bankrupt, that its plant was in poor condition, and that the few laborers who were there when the mines closed, quit work because of unsatisfactory conditions, due primarily to defendant's lack of funds. The slide referred to was shown to have been of trifling consequence.

Syllabus.

*Held:* That there was neither a strike nor a slide of such a character as to excuse the lessee from the operation of the mines according to contract, and that defendant was not entitled to an instruction regarding these alleged excuses.

4. INSTRUCTIONS—*Evidence to Support.*—An instruction need not be given where the evidence in support of it is insufficient to sustain a verdict.

5. MINES AND MINERALS—*Lease—Forfeiture.*—A mining lease provided for forfeiture upon failure to operate the mines for three months.

*Held:* That, where the lessee had been notified that it would not be further indulged and would be expected thereafter to meet the requirements of the lease, a later notice upon its coming to the knowledge of the lessor that the mines were not being operated, that a forfeiture would be enforced if the lease was not complied with, could not be construed as extending the period during which the non-operation of the mines would not work a forfeiture.

6. MINES AND MINERALS — *Lease — Forfeiture — Construction of Lease.*—A mining lease contained a clause providing that a failure to operate the mines for three months should *ipso facto* work a forfeiture of the lease. Another clause provided that the failure of the lessee to perform any of the covenants and agreements of the lease for a period of thirty days should be deemed, at the option of the lessor, to work a forfeiture. It was contended by the lessee that the latter clause gave him the benefit of an additional thirty days before the forfeiture provided for in the first clause became effective, but it was held under familiar rules of construction that the lease must be interpreted as a whole and in such a way as to give effect to all its provisions; that the latter clause was a general forfeiture clause, applying to the many "covenants and agreements" of the lessee contained in the lease, and the former clause a specific provision covering specific situations.

7. MINES AND MINERALS—*Forfeiture of Lease—Instructions.*—In an action of ejectment by a lessor to recover mining property, the lease of which he alleged had been forfeited, an instruction that if the defendant company failed to pay the royalties when due, and such failure continued for a period of more than thirty days prior to the institution of the suit, the jury should find for the plaintiff, unless they believed "that the same was waived by the plaintiff," is not ambiguous, and liable to lead the jury to believe that it had reference to a waiver of the royalties themselves instead of a waiver of the forfeiture.

8. EJECTMENT—*Landlord and Tenant—Distress.*—In an action of ejectment by a landlord against his tenant where the amount of the rent exceeded the value of all the personal property on the premises, the failure of an instruction to refer to the remedy by distress is immaterial.

9. MINES AND MINERALS—*Lease—Forfeiture.*—In an action to enforce the forfeiture of a mining lease, it was not error to refuse an instruction that "if the plaintiff declared a forfeiture on one ground, with knowledge of other grounds of forfeiture, it must stand or fall upon the ground declared," where it appeared that plaintiff had told defendant that it intended to declare a forfeiture upon the ground of non-operation of the mines, but when the action was tried, the plaintiff was required, upon the defendant's motion, to file a bill of particulars of its claim, and in doing so it set out a large number of additional grounds, including the failure to pay royalties, all of which were negatived in a statement of the grounds of defense, and the case was tried upon the issues as thus defined. One of the grounds of defense was that the plaintiff failed to give the defendant notice of any ground of forfeiture prior to the institution of the suit. Therefore, defendant cannot afterwards maintain that plaintiff did give notice of one distinct ground of forfeiture to the exclusion of all others.

10. EJECTMENT—*Parties to Action.*—One operating mines under a contract with a lessee which gave him exclusive possession thereof for the time being, but whose possession was not exclusive of and was subordinate to the possession of the entire tract by the lessee, is not the party actually occupying the premises, as those terms are used in section 2726, Code of 1904.

11. EJECTMENT—*Parties—Section 2726 of the Code of 1904.*—Section 2726 of the Code of 1904 provides: "The person actually occupying the premises and any person claiming title thereto or claiming any interest therein adversely to the plaintiff may also at the discretion of the plaintiff be named defendants in the declaration." Prior to the amendment of this section by the act of February 26, 1896 (Acts 1895-6, p. 514), it directed that "the person actually occupying the premises shall be named defendant in the declaration." The purpose of the amendment seems to have been to permit the plaintiff to join with the occupant as defendants any other persons claiming title to the land; and it may be conceded that the actual occupant is always a necessary party defendant to an action of ejectment in the sense that another defendant may by timely

and proper procedure compel the plaintiff to bring the occupant before the court. The presence of the occupant, however, is not essential to the jurisdiction of the court, and if the claimant of the premises who is sued does not appropriately raise the point, and defends the action upon the merits, he is bound by the judgment.

12. EJECTMENT—*Parties to Action—Non-Joinder of Parties—Plea in Abatement.*—Where the plaintiff in actions *ex delicto* improperly omits parties who ought to be joined as defendants there can be no question that the proper remedy is exactly the same as in actions *ex contractu.* The regular and well established method of objecting to any action "for too few defendants," where the ground for the objection does not appear on the face of the declaration, is by a plea in abatement. The decisive question is whether the objection is good, not whether the action is in contract or in tort. Ordinarily the objection is not good in actions of tort, but wherever it is good, regardless of the form of the action, the only remedy known to our law is a plea in abatement. Consequently, defendant in ejectment under the general issue has no right to raise the question of the failure of the plaintiff to name as defendant the person actually occupying the premises.

13. EJECTMENT—*Pleas—Section 2734, Code of 1904.*—Section 2734 of the Code of 1904, restricting defendants in ejectment to the plea of the general issue, refers only to pleas in bar and does not preclude pleas in abatement.

14. PLEA IN ABATEMENT—*Time of Filing.*—A plea in abatement for non-joinder of parties, under section 3260 of the Code of 1904, cannot be received after the defendant has pleaded in bar.

Error to a judgment of the Circuit Court of Tazewell county, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The instructions given at the instance of the plaintiff were:

No. 1. The court instructs the jury that if they believe from the evidence that the defendant company ceased to mine and ship coal from the leased premises described in the deed of lease introduced in evidence in this case, from

the 11th day of August, 1916, to or after the 12th day of November, 1916, they shall find for the plaintiff unless the jury believes that the plaintiff waived this cause of forfeiture.

No. 2. Section 12 of the lease provides as follows: "If at any time during the existence of this lease the lessee, his assigns or successors, shall cease for the period of three months to operate the mines in the manner usual and herein contemplated, then such failure shall *ipso facto* work a forfeiture of this lease, and thereupon all improvements placed upon said property shall become the property of the lessor unless the delay is unavoidable and caused by circumstances beyond the control of the lessee." ·

When the defendant entered into the lease, it obligated itself to work the mines on the defendant's premises according to the terms of the lease, and to provide the necessary funds for so doing. If it ceased to operate the mines for want of funds, that was not a delay that was unavoidable or caused by circumstances beyond its control.

The plaintiff had the right to stand on the letter of its lease, and to refuse defendant further indulgence for breaches of such lease; and if you find that on October 7th the plaintiff told the defendant that in the future it would stand on the strict letter of its lease, and that future indulgence would not be granted and that the defendant did not operate the mines on plaintiff's property from August 11, 1916, until November 12, 1916, you should return your verdict for the plaintiff.

No. 3. The court instructs the jury that if they believe from the evidence that the defendant company failed to pay to the plaintiff the rents or royalties due for coal mined by said defendant under the terms of the deed of lease introduced in the evidence in this case and the failure to pay

the same continued for a period of more than thirty days prior to the institution of this suit then they shall find for the plaintiff, unless the jury believe the same was waived by the plaintiff.

No. 4. The defendant company acquired the lease by assignment. It took over the lease and became the owner of it, and it must be held to have had notice of all the facts disclosed and all the recitals contained in the lease, including paragraph 12, which gives the right of forfeiture for failure to operate the mines for three months, and the defendant cannot be heard to say that it did not know of such provision.

*Robinson* v. *Crenshaw*, 84 Va. 348, 356, 5 S. E. 222; *Lamar* v. *Hale*, 79 Va. 147, 160.

The instructions given at the instance of the defendant were:

No. 1. The court instructs the jury that he who alleges a forfeiture must prove it by a preponderance of the evidence.

No. 2. The jury is further instructed that where a lessor, after knowledge of the breach of a covenant or condition for which he could enforce a forfeiture, expressedly or impliedly recognized the continuance of the tenancy, he thereby waives the forfeiture for such breach and is afterwards precluded from asserting it.

No. 3. The court instructs the jury that a waiver of the forfeiture set out in the lease, or any of them, may be either express or implied; it may be by word or by acts. All that is necessary in order to constitute such a waiver is for the plaintiff, after discovering the ground of forfeiture had arisen, to continue to recognize the lease as being in existence.

18 *Amer. Eng. Encyc. of Law* 382.

No. 6. The court instructs the jury that if the defendant departed from the terms of the lease for which a forfeiture is claimed with the acquiescence of the plaintiff, or if such departure on the part of the defendant was caused by conduct of the plaintiff, which reasonably induced the defendant to believe that the plaintiff did not intend to enforce a forfeiture in case of such a departure, then the plaintiff is estopped from asserting such forfeiture.

18 *Amer. Eng. Ency. Law* 383.

*Hukill* v. *Myers*, 36 W. Va. 639, 15 S. E. 151.

*Randol* v. *Scott*, 110 Cal. 590, 42 Pac. 976.

No. 7. The court instructs the jury that if they believe from the evidence that the plaintiff released the defendant from the payment of royalties accrued prior to April, 1916, then the plaintiff waived its right to declare the forfeiture of the lease by reason of the failure to pay said royalties.

No. 8. The court instructs the jury that the plaintiff cannot claim a forfeiture for failure to pay royalties which it, the plaintiff, refused to accept.

No. 9. The court instructs the jury that if they believe from the evidence that the plaintiff, by its words or acts, caused the defendant to believe that it would not insist upon a forfeiture for failure of the defendant to comply with the terms and conditions of the lease, and thereby lulled the defendant into security and caused it to do or fail to do something which was contrary to its duties under the lease, and which otherwise it would have done, then such words and acts of the plaintiff was a waiver of its right to insist upon a forfeiture for such act.

No. 10. The court instructs the jury that the lease does not permit the plaintiff to claim a forfeiture for failure to work the mines according to approved methods of modern

mining unless the evidence shows that the question of whether or not they were being worked in approved modern methods was referred to arbitrators in accordance with provision seven of the lease, and that the defendant failed to carry out the findings and judgment of said arbitrators.

No. 11. The court instructs the jury that if they believe from the evidence that the defendant ceased for the period of three months to operate the mines in the manner as contemplated in the lease, still such failure did not work a forfeiture of the lease unless the delay was avoidable by the defendant and caused by circumstances within the control of the defendant. If such delay was unavoidable and caused by circumstances beyond the control of the lessee, then such cessation is not a cause of forfeiture.

No. 15. The court instructs the jury that even though the lease shown in evidence provides that the failure of the lessee to operate the mines in the manner usual and therein contemplated, for the period of three months, shall *ipso facto* work a forfeiture of the lease, this language means no more than that the lease shall be forfeited upon the failure to operate for the time specified upon the election of the lessor. The mere failure to work for three months does not of itself, operate to forfeit the lease.

And, after argument by counsel, the jury retired and rendered the following verdict:

"We, the jury, on the issue joined, find for the plaintiff that it recover from the defendant, who was in possession thereof at the commencement of this action, possession of the land in its declaration specified, and that it is entitled to the same in fee simple.—Henry Harrisson, Foreman."

Instructions refused defendant are:

67

No. 4. The court instructs the jury that if the plaintiff declared a forfeiture on one ground with knowledge of other grounds of forfeiture, he must stand or fall upon the ground of forfeiture which he declared, and if he fails to establish his right to declare a forfeiture on such ground, then the verdict must be for the defendant.

No. 5. The court instructs the jury that even if the terms of the lease were violated in every particular, yet if the jury believe from the evidence that the defendant knew of these violations and failed to elect and declare a forfeiture on account thereof but continued to recognize the lease as in existence after such knowledge, then the plaintiff waived his right to declare a forfeiture by reason of said violation.

⁂ No. 13. The court instructs the jury that if they believe from the evidence that the operation of the mines was not resumed between August 11 and November 17 because the plaintiff and defendant agreed in order to properly work the mines additional capital was necessary, and that the said defendant should, before resuming operations, procure $10,000.00 additional capital stock, then the defendant had a reasonable time within which to raise said additional capital, and the jury in estimating the time which was to elapse before the plaintiff could declare a forfeiture under the twelfth clause of the deed of lease must deduct such reasonable time.

No. 14. The jury are instructed that under the twelfth clause of the lease shown in evidence the covenant against ceasing to operate the mines for the period of three months, in the manner usual and therein contemplated, was not broken until the expiration of the last hour of the last day of such three months period, during which the operation contemplated under the lease had ceased. And they are

further instructed that under the twenty-third clause of the said lease, before the lessor has the option to declare the said lease forfeited for the failure to perform any of the covenants and agreements in the lease, the breach of the covenant must continue for thirty days after such breach so that unless the jury believe from the evidence that the defendant not only ceased to operate the mines in the manner usual and contemplated in the lease, for the period of three months, but that such failure continued for the further period of thirty days after the lapse of such three months cessation of work, or in other words, that the plaintiff ceased to operate the mine for three months and thirty days, then no forfeiture was incurred and the jury must find for the defendant.

Instruction No. 16. The court instructs the jury that although the twelfth clause of the lease shown in evidence in this action provides that "if at any time during the existence of this lease the lessee, his assigns or successors shall, for the period of three months, cease to operate the mines, in the manner usual and herein contemplated, then such failure should *ipso facto* work a forfeiture of this lease"—this language only means that upon the failure of the lessee to work the mines for the period of three months in the manner usual and contemplated, then such failure shall, at the option of the lessor, work a forfeiture. And the jury is further instructed that before the Clinch Valley Coal Mining Corporation can elect to treat the lease as forfeited, for the failure of the lessee to operate the mines in the manner usual and contemplated under the lease, and before the Clinch Valley Mining Company can maintain an action of ejectment, based upon the forfeiture of the lease by the lessee for the failure to perform this condition, the said Clinch Valley Coal Mining Company must

first demand that the lessee perform the condition. And they are further instructed that unless they believe from the evidence that such demand of performance was made by the Clinch Valley Coal Mining Corporation of the Matoaka Coal Company, they must find for the defendant.

No. 18. The court instructs the jury that unless they believe from the evidence that the Matoaka Coal Corporation was actually occupying the premises set out in the declaration filed in this action, at the time of service of the declaration, and notice, then the plaintiff cannot recover in this action, and your verdict should be for the defendant.

The defendant also offered the following instruction:

No. 1. The court instructs the jury that forfeitures are not favored in law, and that he who alleges a forfeiture must prove it by a preponderance of the evidence.

But the court modified said instruction so as to read as follows: "The court instructs the jury that he who alleges a forfeiture must prove it by a preponderance of the evidence."

Error to a judgment of the Circuit Court of Tazewell county, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

*R. Randolph Hicks* and *J. Powell Royall,* for the plaintiff in error.

*Greever, Gillespie & Devine* and *A. T. Seymour,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action of ejectment brought by the Clinch Valley Mining Corporation against the Matoaka Coal Corporation to enforce the forfeiture of a lease of coal land and regain possession of the leased premises. These corporations will hereinafter, for convenience and brevity, be designated as plaintiff and defendant. There was a verdict and judgment for the plaintiff, and the defendant brings the case here upon a writ of error.

The plaintiff is the owner of a tract of coal land in Tazewell county, which, in July, 1913, it leased in writing to one Thomas P. Boswell for a period of thirty years. The particular provisions of this lease, so far as material, will hereinafter appear. Boswell assigned the lease at once to a corporation called the Pocahontas Mining Company, and this company shortly thereafter entered into possession of the leased premises, installed a coal mining plant thereon and continued to operate the same until the fall of 1914, when it became a bankrupt, and its affairs were taken in charge by the United States District Court for the Eastern District of Virginia, sitting as a court of bankruptcy. In due course of the proceedings in that court, the lease was sold on March 6, 1915, at public auction, and was bid in by C. M. Kaylor for the benefit of himself and certain associates. The plaintiff, the Clinch Valley Mining Corporation, was a creditor of the bankrupt corporation and knew and approved of the sale to Kaylor. At the latter's request, the trustee in bankruptcy, with the approval of the court, made a deed, dated March 22, 1915, to the defendant, Matoaka Coal Corporation, which almost immediately assumed the possession and operation of the property and plant and continued the same with results most unsatisfactory and disappointing to itself and to the lessor until shortly before this action was instituted.

The record contains in great detail the history of this coal lease, with all of its vicissitudes and the many negotiations between the lessor and the lessee looking to its continued operation. This history and these negotiations, however, are not material at the present stage of the case, except as they bear upon the correctness of certain rulings of the court at the trial; and in so far as thus material they will sufficiently appear in connection with a discussion of the various assignments of error which we shall now proceed to consider.

The first error assigned, and one which is very seriously relied upon, is that the court improperly refused a continuance upon the motion of the defendant. The motion was based upon the absence of one J. R. Chamberlain, whom the defendant wished to use as a witness. This party resided in North Carolina, was largely interested in the defendant company, and had not been summoned as a witness. It is contended and may be conceded that the case was called for trial, and a trial ordered by the court, earlier in the term than counsel for defendant anticipated; but upon their own showing they had no reason to suppose that a trial would not be had during the term, and no steps had been taken to have the witness in readiness to attend. The motion was for a continuance, not for a mere postponement to a later day in the term; but the defendant was not in a position to ask for either a continuance or postponement, because when the case was first called Mr. Chamberlain was out of reach, having started from his home in North Carolina on a trip to Florida for a period of rest, and to recuperate his health, apparently leaving no information by which he could be located. The condition of his health was not such as to have prevented his attendance as a witness; for counsel stated to the circuit court, and they reiterate in their brief, that there would have

been "no trouble in getting him" if they could have located him after finding that they would have to go to trial. The plaintiff and its counsel had done nothing to lead the opposite side to suppose that a trial would not be demanded, and the nature and spirit of the controversy was such as to specially charge them with notice that any effort to continue the case would be resisted. Moreover, so far as the record discloses, the testimony of this witness would have been largely if not wholly cumulative and quite unlikely to have affected the result. "A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case, and although an appellate court will review the action of the trial court, it will not reverse its judgment upon such motion unless plainly erroneous." (*Payne* v. *Zell*, 98 Va. 294, 295, 36 S. E. 379.) This familiar and well settled rule is not controverted by counsel for defendant, but they maintain that the instant case does not fall within its influence. We are of a contrary opinion. In our view of the evidence upon the question, the trial court did not abuse its discretion in refusing the continuance.

The second assignment of error involves the action of the court upon the instructions to the jury. In approaching the discussion of this branch of the case, it becomes necessary to set out in full section twelve of the lease, that section being the one upon which the controversy seems to have mainly turned. The section is as follows:

"If at any time during the existence of this lease the lessee, his assigns or successors, shall cease for the period of three months to operate the mines in the manner usual and herein contemplated, then such failure shall *ipso facto* work a forfeiture of this lease, and thereupon all improvements placed upon said property shall become the property of the lessor unless the delay is unavoidable and caused by circumstances beyond the control of the lessee."

The instructions given and refused are reported in full with this opinion.

Plaintiff's instruction No. 1 told the jury that if they believed from the evidence that the defendant company ceased to mine and ship coal from the leased premises from the 11th of August, 1916, to or after the 12th of November, 1916, they should find for the plaintiff, unless they should believe "that the plaintiff waived this cause of forfeiture." The objection urged to this instruction is that it disregarded that portion of clause twelve of the lease providing against forfeiture for "delay which was unavoidable and caused by circumstances beyond the control of the lessee." This objection, in substance, is urged in connection with several of the instructions, and may be disposed of here once for all. The "circumstances beyond the control of the lessee" relied upon by the defendant to excuse it from the operation of the property during the period in question are an alleged general strike at the mines and an alleged mountain slide covering the tracks over which the coal had to be shipped. A careful consideration of the record fully satisfies us that unless we return to the scintilla doctrine and hold that an instruction must be given where the evidence in support of it is insufficient to sustain a verdict, the defendant was not entitled to have any instructions regarding these alleged excuses. The defendant was practically bankrupt, its plant was in poor condition, its miners had become restless and uneasy, and the very few laborers who were there when the mines closed quit work because of unsatisfactory conditions, due primarily to defendant's lack of funds. The slide referred to is shown to have been of trifling consequence. When steps were finally taken to move cars over the tracks, the so-called slide proved to be a very slight obstruction, and was cleared up in a few days. Upon no reasonable view of the case could it be held that

there was either a strike or a slide of such character as to excuse the lessee from the operation of the mines according to contract.

Plaintiff's instruction No. 2, after quoting in full section twelve of the lease, told the jury that if the defendant ceased to operate the mines for want of funds, this could not be considered a delay that was unavoidable, or caused by circumstances beyond its control; that the plaintiff had the right to stand on the letter of its lease and to refuse the defendant further indulgence for breaches of the same; and that if the jury found that "on October 7th the plaintiff told the defendant that in the future it would stand on the strict letter of its lease and that future indulgence would not be granted, and that defendant did not operate the mines on plaintiff's property from August 11th to November 12th," they should return a verdict for the plaintiff.

It is urged that this instruction was wrong because it told the jury, in effect, that on October 7th, after a considerable portion of the three months had expired, the plaintiff could then recall a previous waiver of the twelfth clause of the contract and, by a sort of retrospective action on its part, claim a forfeiture under a three months' period beginning August 11th, although, in the meantime, it might have led the defendant to believe that it would not rely upon such ground of forfeiture. Every instruction must be interpreted in the light of the facts of the particular case. The objection made to this one upon its face would appear to have some merit, but it has none when it is recalled that shortly prior to August 11th the defendant had been notified that it would not be further indulged and would be expected to thereafter meet the requirements of the lease, and that between August 11th and October 7th the plaintiff company does not appear to have had any knowledge of the fact that the mines were not being operated. On or about that date the representatives of the

company did come into possession of this knowledge, and, while there was no obligation upon them to do so in view of the previous notice, they did call it sharply to the attention of the defendant at that time that a forfeiture would be enforced if the lease was not complied with. In view of the actual facts of the case the instruction would not have been bad if the court had not referred at all to the notice given to the defendant on October 7th, and the mention of it in the instruction amounted to nothing more than saying to the jury that if they believed that the plaintiff, after learning that the mines were not being operated, did nothing to mislead the defendant with reference to its attitude, they should find for the plaintiff.

There is another objection urged to this instruction No. 2 which is based upon an interpretation sought to be placed by the defendant upon section twenty-three of the lease. That section provided, among other things, that "any failure on the part of the lessee to keep and perform any of the terms, conditions, covenants and agreements herein contained, on the part of the lessee to be kept, performed and fulfilled, which shall continue for a period of thirty days, shall be deemed, at the option of the lessor, *ipso facto* to work a forfeiture of this lease."

The contention of the defendant in this connection is that the effect of this clause was to give the defendant the benefit of an additional thirty days before the forfeiture provided for in clause twelve should become effective. We cannot accept this view. Under familiar rules of construction, the lease must be interpreted as a whole and in such a way, if possible, as to give effect to all of its provisions. There were many "covenants and agreements" by the lessee, and section twenty-three was a general forfeiture clause, while section twelve is a specific provision covering specific situations not embraced within the terms of the

general section. There is not, in our opinion, any room for doubt or dispute upon this point.

Plaintiff's instruction No. 3 tells the jury that if the defendant company failed to pay the royalties when due, and such failure continued for a period of more than thirty days prior to the institution of the suit, they should find for the plaintiff, unless they believed "that the same was waived by the plaintiff." The objection made to this instruction is that it is ambiguous and was liable to lead the jury to believe that it had reference to a waiver of the royalties themselves instead of a waiver of the forfeiture. We do not think there was any reasonable probability that the jury could have taken this view of the instruction. There had been a good deal of evidence in the case with reference to a remission of certain of the royalties, but, taken as a whole, and in view of the character of the controversy which was being waged before the jury, we think it practically certain that men of intelligence, as the jury must be presumed to have been, could not have misunderstood the meaning of the court, and we would be altogether unwarranted in reversing the judgment upon this objection to the instruction.

A second and equally untenable objection to this instruction is that it ignores the terms of section 2796 of the Code, requiring, in actions of ejectment based upon a right of re-entry for non-payment of rents, proof that there was no sufficient distress upon the premises. The amount of the rent exceeded the value of all the personal property on the premises, and the failure of the instruction to refer to the remedy by distress was therefore immaterial.

The third assignment of error calls in question the refusal of certain instructions asked for by the defendant. The criticism of the action of the court in this respect is based mainly upon reasons which have already been dis-

posed of in the previous part of this opinion. Only two of the instructions refused seem to us to call for any special notice. The first of these is defendant's instruction No. 4, in which the court was asked to tell the jury that "if the plaintiff declared a forfeiture on one ground, with knowledge of other grounds of forfeiture, it must stand or fall upon the ground declared." There was no error in refusing this instruction. When Mr. Scott, a representative of the plaintiff, went to the mines after they had been idle for over three months, he told a representative of the defendant that he was there to declare a forfeiture under section twelve of the lease. When this action was tried, however, the plaintiff was required, upon the defendant's motion, to file a bill of particulars of its claim, and in doing so it set out a large number of additional grounds, including the failure to pay royalties, all of which were negatived in a statement of the grounds of defense. The case was tried upon the issue as thus defined. The contention upon which the defendant's proffered instruction No. 4 rests was not indicated in the grounds of defense, but upon the contrary one of those grounds was that "the plaintiff failed to give the defendant notice of any ground of forfeiture prior to the institution of this suit." The defendant cannot now be heard to say that the plaintiff did give notice of one distinct ground of forfeiture to the exclusion of all others. There being nothing in this particular contention, the question of serving notice of the grounds of forfeiture is immaterial. No such notice was requisite. The defendant knew the terms of its contract. The institution of the suit was sufficient notice in advance of the trial; and the bill of particulars fully apprized it of the exact claims made by the plaintiff. The real controversy seems to have centered around the alleged failure to operate the mines and to pay the rents. If what transpired when Scott de-

clared a forfeiture at the mines was relied upon as a waiver of a forfeiture for non-payment of rents, that question was submitted to the jury in plaintiff's instruction 3 and under defendant's instruction 9, and was by them found against the defendant.

The other instruction, defendant's No. 18, which was refused by the court and calls for some discussion, was to the effect that the plaintiff could not recover unless the Matoaka Coal Corporation was actually occupying the premises when the action was instituted. This instruction presents the same question which is involved in defendant's fourth assignment of error, the latter challenging the action of the court in excluding from the jury a certain letter from one D. H. Barger to the attorney for the defendant, containing the terms of a certain contract between Barger and the defendant, whereby Barger agreed to assume possession of and operate the mines.

It appears from the testimony of Barger and from the letter in question, that on December 4, 1916, (without the plaintiff's consent or knowledge, and after it had signified its purpose to enforce the forfeiture) the defendant entered into a contract with Barger by virtue of which he took possession of the mines and mining plant and began to operate the same. This was a few days before the present action was brought, and the contention of the plaintiff is that the action could not be maintained without making Barger, as the party actually occupying the premises, a party defendant.

In our view of the whole of the evidence bearing on this question, including the contract which was excluded from the jury but which the trial court saw and certified here as part of the record, we do not think that Barger can be regarded as the party in actual possession of the premises within the meaning of the statute, Code, section 2726, re-

lied upon by defendant. He was operating the mines under a contract which gave him exclusive possession thereof for the time being, but that possession was not exclusive of and was subordinate to the possession of the entire 1,200-acre boundary by the defendant, as to which no change was made or intended to be made by the contract with Barger.

If, however, the contract with Barger be regarded as a sub-letting to him whereby he became the under-tenant of the defendant and in full possession of the premises, the result is the same.

Section 2726, so far as material here, says: "The person actually occupying the premises and any person claiming title thereto or claiming any interest therein adversely to the plaintiff may also at the discretion of the plaintiff be named defendants in the declaration." Prior to the amendment of this section by the act of February 26, 1896, (Acts 1895-6, p. 514) it directed that "the person actually occupying the premises shall be named defendant in the declaration."

The purpose of the amendment seems to have been to permit the plaintiff to join with the occupant as defendants any other persons claiming title to the land (Burks Pl. and Pr., sec. 119, p. 200); and it may be conceded that the actual occupant is always a necessary party defendant to an action of ejectment in the sense that another defendant may by timely and proper procedure compel the plaintiff to bring the occupant before the court. The presence of the occupant, however, is not essential to the jurisdiction of the court, and if the claimant of the premises who is sued does not appropriately raise the point, and defends the action upon the merits, he is bound by the judgment.

The statute in question expressly makes the defendant in this case a proper party, and it was manifestly the real party in interest. When called upon during the progress of

the trial, and in answer to its effort to avail itself of the absence of Barger as a party, to say whether it would enter a disclaimer, the emphatic answer was that it would not do so.

The defendant contends that it had the right to raise this question under the general issue. We do not think so. Assuming, for the sake of this discussion, that Barger was "the person actually occupying the premises" within the meaning of the statute, the failure to make him a party, if properly availed of, would have been reversible error, but it was a matter in abatement and not in bar and should have been so pleaded. Pleas in abatement for non-joinder of defendants are not common in actions *ex delicto*, but the reason for this is that in the great majority of tort actions the plaintiff may at his own option, sue one or any or all of those who have participated in the wrong; and in such cases the failure to join any or all participants as defendants is not a valid objection. Burks Pl. & Pr., 55, 59; *Walton, etc.,* v. *Miller,* 109 Va. 210, 220, 63 S. E. 458, 132 Am. St. Rep. 908; *Va. Ry., etc., Co.* v. *Hill,* 120 Va. 408, 91 S. E. 194. But when the reason ceases the law ceases, and where the plaintiff in actions *ex delicto* improperly omits parties who ought to be joined as defendants there can be no question that the proper remedy is exactly the same as in actions *ex contractu.* There is no reason for any distinction in this respect between the two classes of actions, and none is made by the authorities. The regular and well established method of objecting to any action "for too few defendants," where the ground for the objection does not appear on the face of the declaration, is by a plea in abatement. The decisive question is whether the objection is good, not whether the action is in contract or in tort. Ordinarily the objection is not good in actions of tort, but wherever it is good, regardless of the form of the action, the only remedy known to our law is a plea in abatement.

See Graves' Notes on Pleading, sec. 6; Burks Pl. & Pr., p. 76; *National Fire Ins. Co.* v. *Catlin* (Corporation Ct. of Danville), 8 Va. Law Reg. 127, 130; *Prunty* v. *Mitchell,* 76 Va. 169; *Wilson v. McCormick,* 86 Va. 995, 11 S. E. 976; Code, 1904, sec. 3261.

In this case the very contention which the defendant presses upon us rests upon the assumption that the statute makes the omitted defendant a necessary party. This being true, the authorities last cited are directly applicable and are conclusive against the defendant's position.

Section 2734 of the Code, restricting defendants in ejectment to the plea of the general issue, refers only to pleas in bar and does not preclude pleas in abatement. 2 Barton's Law Pr. 1125; Burks Pl. & Pr., p. 202; *James River & Kanawha Co.* v. *Robinson,* 16 Gratt. (57 Va.) 434, 438.

Having seen that the failure to make Barger a party was not a matter in bar of the action, and could only be pleaded in abatement, it necessarily follows that the point was not made either in due time or in due form, and was irretrievably lost after the defendant had pleaded the general issue, as he had done in this case. If the non-joinder had been properly presented in the form of a plea in abatement, it could not have been received after the defendant had pleaded in bar. Code, sec. 3260.

There was no error in excluding the evidence of the contract with Barger and in refusing the instruction No. 18 asked for by the defendant.

The instructions, as a whole, presented fully and fairly to the jury every theory which, under the evidence, the defendant had a right to have the jury consider.

The remaining assignments of error are that the court erred in not setting aside the verdict as contrary to the law and the evidence, and in overruling the motion of the defendant in arrest of judgment. We have already seen that

the evidence was entirely sufficient to warrant the verdict. With reference to the motion in arrest of judgment, it is only necessary to say that, as shown above, there was no error in refusing the eighteenth instruction asked for by the defendant, and it was, therefore, manifestly proper for the court to overrule the motion in arrest, the instruction and the motion being based upon identically the same contention.

Upon the whole case, we are of opinion that there was no error in the judgment complained of, and it must be affirmed.

*Affirmed.*