FANT *v.* ARLINGTON HOTEL COMPANY.

Opinion delivered February 15, 1926.

1.   COURTS—JURISDICTION OF STATE COURTS OVER CEDED TERRITORY.—
     The courts of this State are not deprived, by the cession of ter-
     ritory of the Hot Springs Reservation to the United States, of the
     right to exercise judicial power in the enforcement of transitory
     rights of action in civil matters which accrue in the ceded ter-
     ritory.

2.   STATES—EFFECT OF CESSION OF TERRITORY.—Whenever political
     jurisdiction and legislative power over any territory are trans-
     ferred from one nation or sovereign to another, the municipal
     laws of the former, that is, laws which are intended for the pro-
     tection of private rights, continue in force until abrogated or
     changed by the new government or sovereign.

3.   STATES—LEGISLATIVE AUTHORITY OVER CEDED TERRITORY.—After the
     State ceded jurisdiction over a portion of the Hot Springs Reser-
     vation to the United States by the act of February 21, 1903, the
     State thereafter had no authority to legislate over the territory
     so ceded.

Appeal from Garland Circuit Court; *Earl Witt,*
Judge; reversed.

*Cockrill & Armistead* and *Murphy & Wood,* for ap-
pellant.

*Martin, Wootton & Martin,* for appellee.

McCULLOCH, C. J.   The Arlington Hotel, owned and
operated by a domestic corporation, was situated in the
city of Hot Springs on a portion of the United States
Hot Springs Reservation, which was ceded to the United
States by the General Assembly of Arkansas by statute
approved February 21, 1903.   The statute ceded exclu-
sive jurisdiction to the United States, with the following
proviso: "That this grant of jurisdiction shall not
prevent the execution of any process of the State, civil
or criminal, on any person who may be on such reserva-
tion or premises; provided further, that the right to tax
all structures and other property in private ownership
on the Hot Springs Reservation accorded the State by
the act of Congress approved March 3, 1901, is hereby
reserved to the State of Arkansas."   Congress enacted

a statute (33 Stat. L. 187), approved April 20, 1904, accepting jurisdiction, which, after describing the ceded area, and cession of jurisdiction, provides that the territory "shall be under the sole and exclusive jurisdiction of the United States, and all laws applicable to places under such sole and exclusive jurisdiction shall have full force and effect therein; provided, that nothing in this act shall be so construed as to forbid the service within said boundaries of any civil or criminal process of any court having jurisdiction in the State of Arkansas; that all fugitives from justice taking refuge within said boundaries shall, on due application to the executive of said State, whose warrant may lawfully run within said territory for said purposes, be subject to the laws which apply to fugitives from justice found in the State of Arkansas; and provided further, that this act shall not be so construed as to interfere with the right to tax all structures and other property in private ownership within the boundaries above described."

The hotel building was destroyed by fire on April 5, 1923, and the appellants instituted separate actions in the circuit court of Garland County against the owner to recover compensation for loss of baggage which was destroyed in the fire. Liability is predicated upon facts which would bring the case within the common-law liability of inn-keepers.

There is a statute in this State, enacted by the General Assembly of 1913 (Crawford & Moses' Digest, § 5567), which restricts the liability of hotel keepers to loss or damage to property of guests, so that there is no liability under the circumstances of the present case. In other words, the complaint states the cause of action under the common law, but none under the statute of this State. The court sustained a demurrer to the complaints of the several appellants (the cases being consolidated here) presenting the question, first, whether or not the courts of this State have jurisdiction to enforce civil liability which accrued within territory over which exclu-

sive jurisdiction has been ceded by the State to the United States Government; and second, whether or not a statute regulating civil liability, enacted after a cession of jurisdiction, is applicable to causes of action arising within that territory.

Our conclusion in regard to the first question is that the courts of this State are not deprived, by the State's cession to the general government of exclusive jurisdiction, of the right to exercise judicial power in the enforcement of rights of action in civil matters which accrue in the ceded territory. We are not dealing with a local action, such as one which concerns the title to real estate, and what we say now must, of course, be confined to the character of action involved in these appeals. These are transitory actions which may be enforced anywhere that jurisdiction can be acquired over the person of the defendant. This kind of an action may be enforced here, regardless of the place where the right of action accrued, but of course the *lex loci* must control. The power of the State and general government over ceded territory has been discussed at length by the decisions of the Supreme Court of the United States in several cases. *Ft. Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525; *C. R. I. & P. Ry. Co.* v. *McGlinn,* 114 U. S. 543; *Benson* v. *United States,* 146 U. S. 325. The McGlinn case, *supra,* was one maintained in the State court to recover damages accruing on lands ceded by the State to the United States Government on a cause of action under a State statute enacted prior to the cession of the territory by the State to the government. The question of jurisdiction of the State court was not expressly raised, but it was necessarily included within the decison of the court, for the judgment of the State court was affirmed by the Supreme Court of the United States. The question dealt with in the opinion was not one of jurisdiction, but one of substantive law relating to the effect of State laws existing at the time that jurisdiction over the territory was ceded to the United States. The

opinion of the court was delivered by Mr. Justice Field, and it was said:

"It is a general rule of public law, recognized and acted upon by the United States, that whenever political jurisdiction and legislative power over any territory are transferred from one nation or sovereign to another, the municipal laws of the country, that is, laws which are intended for the protection of private rights, continue in force until abrogated or changed by the new government or sovereign. By the cession public property passes from one government to the other, but private property remains as before, and with it those municipal laws which are designed to secure its peaceful use and enjoyment. As a matter of course, all laws, ordinances, and regulations in conflict with the political character, institutions, and constitution of the new government are at once displaced. * * * But with respect to others affecting the possession, use and transfer' of property, and designed to secure good order and peace in the community, and promote its health and prosperity, which are strictly of a municipal character, the rule is general, that a change of government leaves them in force until, by direct action of the new government, they are altered or repealed. * * * It is true there is a wide difference between a cession of political jurisdiction from one nation to another and a cession to the United States by a State of legislative power over a particular tract, for a special purpose of the general government; but the principle which controls as to laws in existence at the time is the same in both."

Now, it is clear that the exercise of judicial power in the enforcement of civil law involves no question concerning the sovereignty of the general government which exercises exclusive jurisdiction over the territory where the cause of action accrued.

We go no further in determining the validity of the jurisdiction now sought to be exercised, for no other question is involved in the present controversy, but we

do hold that the State court had jurisdiction to hear and determine the right of action in accordance with the law of the place where it accrued.

The next question presented is one which necessarily arises, but which counsel for appellee disclaims being presented in the present status of the case. It necessarily arises because, if the statute restricting liability of hotel keepers, which was enacted subsequent to the cession of jurisdiction to the Federal Government, applies, no cause of action is stated in the complaint, and the ruling of the court sustaining the demurrer was correct, though based upon the wrong ground. We think it is equally clear that the statute was inoperative. The cession of jurisdiction was necessarily one of political power, and it took away the authority of the State Government to legislate over the territory ceded to the general government. This point is expressly decided by the Supreme Court of the United States in the Lowe case, *supra,* where the court said:

"These authorities are sufficient to support the proposition, which follows naturally from the language of the Constitution, that no other legislative power than that of Congress can be exercised over lands within a State purchased by the United States with her consent for one of the purposes designated; and that such consent, under the Constitution, operates to exclude all other legislative authority."

In other portions of the decision attention is called to the distinction between land owned by the general government with merely a proprietary interest and those lands over which exclusive jurisdiction has been ceded to it by the State in which the lands are situated.

The court erred in sustaining the demurrers and dismissing the complaints, so the judgments are reversed, and the causes remanded with directions to overrule the demurrers.