# Richmond.

## NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY v. J. R. PARKER, ET AL.

March 21, 1929.

486

The opinion states the case.

*Willcox, Cooke & Willcox*, for the plaintiff in error.

*W. R. L. Taylor* and *Kelsey & Jett*, for the defendants in error.

HOLT, J., delivered the opinion of the court.

This is an action by motion for the recovery of damages occasioned by personal injury, charged to have been negligently inflicted.

J. R. Parker, the plaintiff, was caretaker on the Mt. Vernon, a ship out of commission belonging to the United States Shipping Board and moored alongside of Pier No. 1 of the Norfolk army base. On the afternoon of June 6, 1927, in company with one Fisher, employed in like capacity on another vessel, he went to C. H. Morecock's store, but a short distance away, where purchases were made, including a five-gallon can of oil. These supplies, except the oil can, Morecock put in the back of his automobile, a Chevrolet closed car, known to the trade as a coach. Fisher sat on the back seat with the groceries. Parker was on the right side in the front seat with his right arm out of the open window, that he might hold the oil can in place, put on the running board at Morecock's suggestion. The car was driven by a negro boy, about seventeen

years old named Lomax, who was, of course, on the left hand front seat, at the wheel. All of this was done at the instance of Morecock, who said to Lomax, "James, take Parker there, and Fisher and their supplies back to the boat. * * * Put that oil can on the running board and Parker can take care of it." It was for this purpose that the car was sent on its way. As it started, a boy named Wescott asked for a ride, was given permission, and jumped upon the running board on the left and opposite side from where the oil can was.

Thus loaded, the automobile, with its passengers, went into the army base and was driven along a concrete roadway, which runs north and south across the front of its piers, Pier No. 1 included. That pier is an enclosed shed about 1,000 feet long on which are three railroad tracks. There are two driveways across these tracks at the entrance to the pier shed, with a space of cinders between. Measured by the direction in which the automobile was going, the pier was on the right. A freight car, whose end was flush with its entrance, stood on the first track, and on the second was a switch engine, owned and operated by the defendant railroad. When the front wheels of the automobile had reached the far rail of the first track, the approaching yard engine was, for the first time, seen. Parker called to the driver, "Look out!" He turned slightly to the left but continued on his way, and the collision occurred as he was crossing the second track. The tender of the yard engine, which was backing out, struck the automobile on the right side where the plaintiff sat, and pinned his right arm to the car. One of its bones was fractured and the tendons between the elbow and wrist severed. There were also some super-

ficial wounds of the face caused by broken glass. The injury to the arm was below the elbow, and the forearm is now apparently permanently useless. At the time he was hurt, plaintiff's salary was $82.50 a month.

The railroad and Morecock were sued as joint tort feasors. In due course the issues were submitted to a jury, which found a verdict against the railroad in the sum of $15,000.00, and found, also, that Morecock was not guilty. This verdict was confirmed by the trial court, and its judgment is now before us on a writ of error.

Both of the defendants filed pleas in abatement. The substance of the claim there made is that the cause of action arose in the United States army base, which, though physically within the corporate limits of the city of Norfolk, is not a part thereof, nor of the State, but with the consent of the State of Virginia was purchased by, and is now owned by, the United States of America, the effect of which was to vest in the Federal government, under the provisions of Article 1, section 8, clause 17, of the Federal Constitution, exclusive jurisdiction.

This property was bought on February 20, 1918, and jurisdiction was ceded to the United States by an act of the General Assembly of Virginia, Acts 1918, page 568, which provided that it should remain in the United States so long as its ownership or any interest therein continued.

The claim seems to be that the cause of action arose on a Federal reservation, and that in no event can any rights thereunder be enforced in an action in a State court.

In *Crook Horner & Co.* v. *Old Point Comfort Hotel Co.* (C. C.), 54 Fed. 604, it was held that the laws of

Virginia applied on the army post at Fortress Monroe, unless they, in some measure, interferred with the purposes for which it was held, since it was ceded rather than purchased, and it is argued from this that they would have been without force if there had been a purchase, as that term is ordinarily used. In other words, it is said that but for the cession of the land, there was no civil law in force there inherited from the State. Judge Hughes did not think so, for in the course of his opinion he observed: "While Congress has enacted a complete criminal code in relation to crimes committed within places within which it has exclusive jurisdiction and on the high seas, it has provided no laws for the government in civil matters of the inhabitants of forts, arsenals, magazines and dock yards. These places, when acquired in the manner defined by the clause of the national Constitution just quoted, are without laws in civil matters except such general laws as may have been in force respectively in the States from which the United States derived them at the time of acquisition."

There is no body of Federal common law apart from the common law in the several States in the sense that there is a body of Federal statutes distinct from those of the States. "But it is an entirely different thing to hold that there is no common law in force generally throughout the United States." *Kansas* v. *Colorado*, 206 U. S. 46, 27 S. Ct. 655, 51 L. Ed. 956, and it does not follow that the exclusive Federal jurisdiction takes the territory from out of its operation. That system of jurisprudence is followed unless set aside by the Federal Constitution or by some act of Congress, and Federal courts administer it every day. This rule is generally observed throughout the United

States unless the territory in question, when acquired, was governed by some other system of laws, the civil law for example. *Shively* v. *Bowlby*, 152 U. S. 9, 14 S. Ct. 548, 38 L. Ed. 331; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 21 S. Ct. 561, 45 L. Ed. 765; *Kansas* v. *Colorado*, 206 U. S. 46, 27 S. Ct. 655, 51 L. Ed. 956; *Ex Parte De Vere*, 18 N. W. 246, 136 Pac. 47. Federal jurisdiction is exclusive on the army base. No attempt has been made to encroach upon it. This is all that has been done. A State court has sought to enforce in a transitory action a common law right which originated there, and this it may do.

*Foley* v. *Shriver*, 81 Va. 568, is relied upon as establishing a different rule. The court there merely decided that "The National Home for Disabled Volunteer Soldiers" was under exclusive Federal jurisdiction, and said: The officers of the said 'The National Home for Disabled Volunteer Soldiers' are disbursing officers of the United States government, and the money in their hands as such, appropriated by act of Congress for public uses, is the money of the United States until applied to the designated ends, and cannot be reached by garnishee process in the hands of the public officials nor subject to attachment. *Buchanan* v. *Alexander*, 4 Howard 20 [11 L. Ed. 857]; *Tracy* v. *Hornbucker*, 8 Bush. [Ky.] 336; *Bulkley* v. *Eckert*, 3 Penn. 368 [45 Am. Dec. 650]; *Chealey* v. *Brewer*, 7 Mass. 259."

■ When the right is transitory, action may be brought wherever the defendant can be found, provided he is personally served with process. Burks' Pleading and Practice, page 65.

If there were ever any doubt, it is dissipated by *Ohio River Contract Co.* v. *Gordon*, 244 U. S. 68, 37 S.

Ct. 599, 61 L. Ed. 991. That contract company was an Indiana corporation and was engaged within the geographical limits of Kentucky in constructing for the United States Government certain canal locks and dams on land known as the Canal Reservation, which had been acquired by the government, through purchase or condemnation. Earth and rock excavated on it by this company were hauled by it to lands outside of the reservation and dumped. The accident occurred on the reservation. It is to be observed that it was not even claimed that no cause of action existed, but only that the jurisdiction of the Federal Government was exclusive and that process was void since the company was not doing business in the State of Kentucky. No one of these contentions was sustained. The court said: "The remaining contentions are also, we think, without merit. Conceding for the sake of argument only that the canal reservation was within the exclusive legislative jurisdiction of Congress, it is clear from the facts we have stated that the business carried on by the corporation was not confined to the land owned by the United States, since it is admitted that in order to dispose of the material excavated in the construction of the canal a line of railway was built which extended beyond the reservation and connected with the tracks of the Kentucky and Indiana Terminal Railway, upon whose property all of the earth and rocks were dumped. This clearly constituted the doing of business within the State and subjected the corporation to the jurisdiction of the Kentucky courts. Assuming also for argument's sake only that the original summons was void because served on the agent designated by the company while he was on the reservation, the subsequent service of the alias

summons on the agent at his home in Louisville was valid, since, as we have seen, the company was doing business in the State. And finally, an action for personal injuries being in its nature transitory and susceptible of being brought in any jurisdiction in which the defendant may be impleaded, there is no foundation for the contention that the court had no jurisdiction over the subject-matter in suit."

This question has recently received consideration at the hands of the United States Supreme Court in the case of *Arlington Hotel* v. *Fant, et al.*, 49 S. Ct. 227, 73 L. Ed. ——, decided on February 18, 1929. That case came in error from the Supreme Court of Arkansas, where it was twice heard, and is reported in 170 Ark. 440, 280 S. W. 20, and in 176 Ark. 613, 4 S. W. (2d) 7. Complainants charge that the hotel was located on a Federal reservation at Hot Springs, and that under the common law there in force it was liable as an insurer of guests' belongings. The defendants claimed that it was subject to a subsequent Arkansas statute, which relieved hotels from such liability except in cases of negligence. Here was a transitory right of action brought in a State court for a wrong suffered on a government reservation. It was held that the common law did apply and the right to recover was sustained.

The defendant railroad is a Virginia corporation, doing business both at the army base and in Norfolk. Morecock lives in Norfolk, and service was had on each of them there. Plainly, the Circuit Court of the city of Norfolk had jurisdiction.

Was the verdict and judgment contrary to the evidence or without evidence to support it?

We had occasion in *Flannagan* v. *N. W. Mutual*

*Life Ins. Co.*, decided January 17, 1929, *ante* page ——, 146 S. E. 353, to consider the weight of evidence requisite to support a verdict and judgment. It is not necessary to restate what was there said. When their validity turns upon evidence, they must be sustained where they are substantially upheld.

Parker said that as he approached the entrance to the pier, he was on the look-out and saw nothing and heard nothing to indicate danger; he heard no bell, and other witnesses have testified to the same effect. For the railroad, it is said that the bell was ringing, and that it was the road's custom to give, at this place, this signal of approach, and that the engine was running slowly and under control. The jury, therefore, might well have found that the bell was not rung, and that this custom, relied upon by those familiar with this locality, was not observed. Parker also testified, as did other witnesses, that this yard engine was traveling at the rate of twenty or twenty-five miles an hour. The jury might have thought that it was negligence to approach a crossing in constant use, at such a rate of speed. There was a box car standing on the first track, flush with the pier entrance. That obstruction to the view should have made the railroad more careful.

It is argued that the physical facts show these estimates of speed to be inherently improbable, in that the automobile was not overturned but was merely pushed some distance down the track and was able to leave under its own power, and further, that Wescott, who stood upon the running board, had time to cross the track on which the engine was, and did so in safety.

We are not prepared to say how fast an engine must

go before it overturns or destroys an automobile in collision. It may be that its speed at the moment of the collision was less than that estimated by the plaintiff, but air brakes had been applied and it had possibly measureably decreased. With brakes on it ran fifty or sixty feet after it struck the car.

On this phase of this case we believe that there is evidence to sustain the jury in finding that the engine was running at a reckless rate of speed, and not slowly and carefully, as is claimed by the railroad company, and also in finding that the bell was not rung, and that no other customary signal of approach was given.

There is nothing in what Wescott did to discredit the plaintiff's testimony. He stood on the left running board and leaped forward and across the track at the moment of collision. It was possible in one jump to save himself.

It was not negligence in the railroad to leave the box car where it was left on the first track, but as a matter of fact its position did make the crossing more dangerous and did call for greater caution.

In *Norfolk & W. Ry. Co.* v. *Holmes*, 109 Va. 407, 64 S. E. 46, this court held that it was usually a question of fact as to whether or not it was negligence to operate a locomotive engine backwards with no one on the tender to signal its approach when crossing at grade a populous city thoroughfare, and said in some circumstances it was negligence as a matter of law.

We are of opinion that the jury was warranted in finding the defendant railroad guilty of primary negligence.

Was the plaintiff guilty of contributory negligence? His evidence is that he both looked and listened, and this we must believe. He further stated

that when he first saw the engine it was about twelve feet from the shed and that he was six or eight from the track on which it was—the center track. He called to the driver, "Look out!" but the driver neither stopped nor turned although he did swerve slightly to the left. There was no negligence here as a matter of law. Taking the plaintiff's evidence as a whole, the collision probably occurred within a second after the engine was first seen.

 *Baltimore & Ohio R. R. Co.* v. *Goodman*, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, is relied upon as establishing a new standard in the law of negligence. When the opinion there is read in the light of the facts in that case, we find it to be but a restatement of an established rule. Goodman, who was killed, was a truck driver, and it has long been settled that it is a driver's duty to stop if the physical situation is such as to make that necessary, before he can in safety cross a railroad track. This was laid down in *Washington & O. D. R. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309, and in *Washington, etc., Ry.* v. *Thompson*, 136 Va. 597, 118 S. E. 76. It is for the jury to say within proper limits if it was necessary that he stop, but the passenger is not required to order him to do so unless the car appears to be out of control, or unless for some other reason danger appears to be imminent. But one man can safely drive a car at one time and something must be left to the driver's judgment and discretion. Any other rule would increase rather than diminish a danger great enough at best.

 "All that can be required of a guest in an automobile, who has no control over it, is to look and listen and warn the driver of approaching danger at a crossing." *Parker* v. *Seaboard Air Line Ry.*, 181 N. C.

95, 106 S. E. 755; *Barrett* v. *Chicago M. & St. P. Ry. Co.*, 190 Iowa 509, 175 N. W. 950, 180 N. W. 670; *Hancock* v. *N. & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849.

██ Parker, who both looked and listened, had the right to presume that the driver was exercising the same degree of care, and not until he had some cause to believe that this confidence was misplaced did the law require him to do more. The car was moving slowly and seemed to be under perfect control.

This instruction was tendered and refused: "The court instructs the jury that if they believe from the evidence that the defendant, Morecock, and the plaintiff entered into an agreement whereby Morecock undertook to deliver to the plaintiff's ship certain purchases made by the plaintiff of the said Morecock, and that said delivery was to be made by an automobile, and that as a part of the agreement the said plaintiff was to go along in said automobile from the store of the defendant, Morecock, to the ship, for the purpose of delivering said purchases, the said plaintiff and the defendant, Morecock, were on a joint adventure, and if they further believe from the evidence that James Lomax was employed by the said defendant, Morecock, to drive said automobile from his store to the plaintiff's ship for the purpose of making said delivery, and on said trip the said James Lomax was negligent in the operation and control of said automobile, and that said negligence contributed to the injury complained of, then the negligence of said Lomax is imputed to the plaintiff and he cannot recover."

██ It should have been refused for there is no evidence to support it. Parker and Fisher bought supplies from the Morecock store. When their purchases

had been completed, Morecock said to James Lomax, his driver, "James, take Parker there, and Fisher and' their supplies back to the boat." There was no joint enterprise here. Morecock was making delivery of his sales in the usual course of business, and the suggestion that Parker and Fisher ride back to their boats was nothing more than a gesture of good will from a shop keeper to a purchaser. Parker exercised no control whatever over the driver and was but a passenger.

The mere fact that Parker rode back with his purchases gave him no control over the car or over its driver. He was not, jointly with Morecock, delivering purchases to himself, or to anybody else.

In *Chesapeake & O. Ry. Co.* v. *Meyer*, 150 Va. 656, 143 S. E. 478, it appears that Meyer was a traveling salesman. His automobile broke down some distance from the town of Mineral. A Mr. Hapes, as an accommodation, sent him on to that place with Mrs. Hapes as driver. She was negligent and Meyer was killed in a crossing accident. The court held that he was but a guest or passenger, and was not responsible for the driver's conduct.

"The doctrine of imputable negligence has been discussed, and the books are full of cases dealing with the question. There are some conflicts in the decisions, but it may be regarded as settled by the overwhelming weight of authority that the negligence of the driver of an automobile will not be imputed to a mere passenger, unless the passenger has or exercises control over the driver." *Va. R. & P. Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918 B, 838.

It is argued that Parker, at any rate, had time to draw in his arm, and this is true, but his failure to

do so is at the most error *in extremis*. The imminence of the peril when discovered may have prevented, and doubtless did prevent, the exercise of good judgment, but this failure under the circumstances should not defeat a recovery.

Shearman & Redfield on Neg., at section 85a, states the law to be: "In judging of the care exercised by the plaintiff, reasonable allowance is always made for the circumstances of the case; and if the plaintiff is suddenly put in peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise."

In all fairness, one who negligently places another in a position of sudden peril should not be heard to complain that he did not react with wisdom and with promptness. *Richmond Ry. & Elec. Co.* v. *Hudgins*, 100 Va. 409, 41 S. E. 736, 740; *Davis* v. *Powell*, 140 Va. 649, 125 S. E. 751. Indeed this doctrine is too well extablished to warrant its elaboration.

It is also said that the verdict is excessive; that $15,000.00 damages for the partial loss of the use of one arm indicates either that the jury was swayed by some improper motive or that it misunderstood the law applicable to the plaintiff's case. In support of this contention, it is pointed out that $10,000.00 is, by statute, a maximum recovery where death ensues, and that $4,500.00 is considered by the legislature a sufficient maximum for any personal injury case arising under the Workmen's Compensation Act (Acts 1918, chapter 400, as amended).

Parker was over forty years old at the time he was

hurt. He was then earning $82.50 a month, or little more than six per cent per annum on the amount of the verdict given. If it is permitted to stand, he will have from it an income for life which approximates his gross earnings, and will leave, at his death, to his estate the $15,000.00 intact. This upon the assumption that his recovery will earn six per cent net uninterruptedly and that he will make no bad investments—which is assuming a good deal.

Questions of this character are always difficult because the law furnishes no standard of measurement. When compensation alone is given, loss in wages is not the only factor to be considered. The jury has a right to remember both the pain and inconvenience inflicted. Most men would be unwilling to lose an arm for any sum of money within reason, and complete restitution is seldom possible. Verdicts of this kind always have in them some of the elements of compromise.

Judge Prentis, in *Chesapeake & O. Ry. Co.* v. *Arrington*, 126 Va. 194, 101 S. E. 415, had occasion to examine this subject. His discussion of it is painstaking, comprehensive and able. Those who desire to inform themselves as to the standards adopted by courts generally are referred to that case.

Recently, in *Colonna Shipyard, Inc.* v. *Dunn*, 151 Va. 740, 145 S. E. 342, the Special Court of Appeals was called upon to consider a verdict charged to be excessive. $35,000.00 was awarded as compensation to Dunn, an ironworker, for personal injuries, which appeared to have occasioned total permanent disability. That court had trouble in reaching a conclusion, and at its request the case was reargued. Judge Chinn there made this satisfactory statement of the Virginia

law: "The settled rule is that, as there is no legal measure of damages in cases involving personal injuries, the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality, or corruption, or that they have been misled by some mistaken view of the merits of the case. Burks' Pleading and Practice (2nd ed.) 537; *Southern Ry. Co.* v. *Smith*, 95 Va. 187, 28 S. E. 173; *Chesapeake & Ohio Railway Co.* v. *Harris*, 103 Va. 635, 49 S. E. 997; *Norfolk & Western Ry. Co.* v. *Shott*, 92 Va. 34, 22 S. E. 811; *Chesapeake & Ohio Ry. Co.* v. *Swartz*, 115 Va. 723, 80 S. E. 568; *Morris & Co.* v. *Alvis*, 138 Va. 149, 121 S. E. 145; *Southern Ry. Co.* v. *Smith*, 107 Va. 553, 59 S. E. 372; *E. I. Dupont* [de Nemours & Co.] v. *Taylor*, 124 Va. 750, 98 S. E. 866; *Farris* v. *Norfolk & Western Ry. Co.*, 141 Va. 622, 126 S. E. 673; *Chesapeake & Ohio Ry. Co.* v. *Carnahan*, 118 Va. 46, 86 S. E. 863."

*Southern Railway Co.* v. *Smith*, 107 Va. 553, 59 S. E. 372, is very much in point. Smith lost an arm, and there, as here, the verdict was for $15,000.00. It was sustained and for these reasons: "It is true that $15,000.00 is a larger verdict than we usually encounter as an award of damages for the loss of an arm; but this furnishes no warrant for our interference with the finding. The question to be considered is not whether this court, if acting in the place of the jury, would give more or less than the amount of the verdict, but whether the damage awarded by the jury is so large or so small as to indicate that the jury has acted under the impulse of some undue motive, some gross error, or misconception of the subject. There is no rule of law fixing the measure of damages in such cases, and it cannot be reached by any process of computation.

It is, therefore, the established rule, settled by numer-' ous decisions extending from *Farish & Co.* v. *Reigle*, 11 Gratt. [52 Va.] 697, 62 Am. Dec. 666, to the recent case of *N. & W. Ry. Co.* v. *Carr*, 106 Va. 508, 56 S. E. 276, that this court will not disturb the verdict of the jury unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. The record in the case at bar furnishes no suggestion that the jury were influenced by partiality or prejudice, or by any misconception of the merits of the case; nor is there anything to indicate that they were not moved to their conclusion from a sense of right and justice."

It is true that Smith lost an arm, while Parker's is only disabled, but it is of little use and money is worth less now than it was in 1908 when Smith's case was decided.

That the judgment is large should be freely conceded, but we cannot say, as a matter of law, that it is so excessive as to indicate prejudice, partiality or corruption, or that the jury was mislead as to the merits of plaintiff's case.

It was against the railroad alone. Morecock went free. The defendant company now claims that if this court should perchance affirm the judgment of the court below and find it guilty, then from the record it must necessarily find that Morecock was guilty also.

"When the negligence of two or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert of action. *Walton, Witten & Graham* .v. *Miller*, 109 Va. 210, 63 S. E. 458, 132 Am. St. Rep. 908;

*Carlton* v. *Boudar*, 118 Va. 521, 88 S. E. 174, 4 L. L. R. 1480." *Lavenstein* v. *Maile*, 146 Va. 789, 132 S. E. 844; *Kelley* v. *Schneller*, 148 Va. 573, 139 S. E. 275.

Of course, if Morecock was not guilty, the jury returned a proper verdict, and it is also true that at common law, there is no contribution among joint s⁴rt feasors, but that right is now given by statute, section 5779 of the Code (Michie's), and we see no reason why it should not be enforced in this action should it appear from the facts that Morecock was also guilty. The injury suffered is indivisible. By the verdict and judgment the railroad has been found guilty and the amount of the recovery fixed. Morecock's liability to contribute towards its payment is the only open question, and it is better that that should be settled here than that litigation should have to be begun all over again.

We do not see why the jury found against the railroad and for Morecock. Lomax was the driver placed in charge of the automobile by Morecock, and for his negligence Morecock is, of course, responsible. Lomax has testified. He was familiar with the physical situation at the point of the accident. His evidence is that the locomotive was right on him when he first saw it. He was asked:

"Q. Did you ever look into that pier at all before you went on the track?

"A. Did I ever look in the pier before I went on the track?

"Q. Yes.

"A. I didn't have time to look in there. The train wᵉs right on me.

"Q. You knew the tracks were there, did you not?

"A. Yes, sir.

"Q. You knew that engines were coming out of that pier constantly?

"A. Knew they were in there constantly?

"Q. You knew there were trains passing in and out of there off and on all day long?

"A. They were not passing there often all day long.

"Q. Well, they were passing there several times a day weren't they?

"A. I don't know how often they go in there.

"Q. You saw the box car in there, didn't you?

"A. Yes, sir, I saw the box car.

"Q. You knew there might be an engine coming on the other track? You knew it was possible an engine was coming on the other track. Why didn't you stop and look around that box car before you went on the track?

"A: Why didn't I stop?

"Q. Yes, exactly.

"A. Because the train was right up on me.

"Q. It was not right on you until you got on the track. The train didn't come off the track, did it?

"A. No, sir.

"Q. You went on the track didn't you?

"A. Yes, sir.

"Q. Why didn't you look before you went on the track?

"A. I did look before I went on the track.

"Q. Where were you when you looked?

"A. Where was I when I looked?

"Q. Yes.

"A. I was on the track."

Even if we did not have this direct admission of negligence, it would still appear from the physical facts. The box car on the first track obstructed the view.

Lomax knew that the crossing was a dangerous one. It was his duty to inform himself of the situation, a duty recognized and emphasized both in the *Goodman Case* and in the *Zell Case.* If his car was under control, as it should have been, it was his duty to stop the moment danger was discoverable, and if it were not under control he was likewise negligent, for he knew the character of the crossing and the necessity for care.

We have dealt with all the material phases of this case, and our conclusions may be thus summed up:

1. The Circuirt Court of the city of Norfolk had jurisdiction.

2. Both the railroad and Morecock were guilty of negligence.

3. The plaintiff was not guilty of contributory neglience.

*4. There was no joint enterprise.

5. The verdict was not excessive.

The verdict and judgment in favor of Morecock must be set aside, and a judgment against him and against Norfolk and Portsmouth Belt Line Railroad Company, as joint tort feasors, will be entered here, and it is so ordered.

*Affirmed in part; reverse in part.*