ROBERT M. MILLER, ET AL. v. FRED TOMLINSON, ET ALS.

CURTIS O. CRABTREE, ET AL. v. FRED TOMLINSON, ET ALS.

December 1, 1952.

Record Nos. 3986, 3987.

Present, All the Justices.

The opinion states the case.

*Campbell & Campbell,* for the plaintiffs in error.

No appearance for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

Curtis O. Crabtree filed a notice of motion for judgment against Fred Tomlinson, Harry Foglesong and Ernest Bivens, partners trading as Bland Motor Sales, to recover the value of a truck owned by Crabtree which was destroyed in a fire that consumed the garage of the defendants.

The truck had been delivered to the garage for repair in the usual course of business.

The notice of motion contained three counts. The first, after setting out the fact that the truck had been taken to the garage and accepted for repair, further set out the undertaking on the part of the garage to return the truck in good order and its failure to do so.

The second count charged that the defendants held themselves out to the public as competent and capable to keep and repair motor vehicles; that the plaintiff Crabtree took his truck to the garage for repair and that the garage failed to return it.

The third count charged the defendants with operating a garage for the general repair of motor vehicles and holding themselves out to the public in that capacity; that in reliance upon this Crabtree delivered to the garage his truck for repair; that it was then the duty of the defendants to use reasonable care to keep the truck safe and return it promptly, but that they disregarded this duty and permitted the garage to catch on fire; that the fire was caused by the negligent failure to use proper precautions and to have proper equipment for extinguishing the fire, or if such equipment was available it was not used.

The defendants filed grounds of defense denying liability.

A companion case of Robert M. Miller against the same defendants was tried with the Crabtree case. It was stipulated that all proceedings had, evidence introduced and orders entered should be considered as if done and had in each case. Separate verdicts were returned and separate judgments entered.

Before the jury was empanelled to try the cases defendants moved the court to require the plaintiffs to endorse upon the notices that any recovery would be for the benefit of plaintiffs and the State Farm Mutual Automobile Insurance Company. Plaintiffs vigorously protested and objected to this motion, which objection was, overruled. Accordingly, endorsements were ordered placed upon the notices, immediately after the name of each plaintiff, reading: "who sues for himself and the State Farm Mutual Automobile Insurance Company as. their interest may appear." Plaintiffs duly excepted to the endorsement which constitutes an assignment of error herein later discussed.

A jury was empanelled to try the issue and verdicts were returned in favor of the defendants, upon which judgments were entered and writs of error granted.

The facts disclosed that the plaintiffs delivered their trucks to the defendants for repair. There was no evidence of an express contract. Admittedly, the delivery of the trucks constituted a bailment for the benefit of both plaintiffs and defendants. The evidence established the fact of delivery and the failure to return.

Under these circumstances a *prima facie* case was made out against the defendants. It then became the duty of the bailees to show that the failure to return the trucks was not due to negligence on their part, that is, that the fire was not started or permitted to spread to the trucks through any negligence of theirs.

"It is true that an action *ex contractu,* where the bailor relies upon the ordinary contract of bailment without predicating his right of recovery upon the bailee's failure to exercise due care, the bailor makes out a *prima facie* case when he shows the delivery of the article to the bailee and the latter's failure to return it on demand or as agreed upon. In this situation the bailee may escape liability by showing that his failure to redeliver was because the property was lost or destroyed without

his fault, but this is an affirmative defense which he must prove. 6 Am. Jur., Rev. Ed., Bailments, § 369, p. 458; 8 C.J.S., Bailments, § 50-b, p. 341.'' *Revenue Aero Club* v. *Alexandria Airport,* 192 Va. 231, 234, 64 S. E. (2d) 671, 673.

In the instant case plaintiffs called Tomlinson, one of the partners, as an adverse witness. Tomlinson stated that he was working on the Miller truck; that he removed the gas tank therefrom and placed it about twenty feet away; that he then undertook the repair of the truck which necessitated the welding of a piece of metal to it; that he wore a hood to protect his face from the heat and sparks from the electric welder; that he was working on a greasy, oil-soaked, wooden floor; that the sparks from the operation flew a distance of three or four feet; that he spread sand on the floor around where he was working to prevent the sparks from igniting the floor, which was an approved practice in such cases.

Tomlinson further stated that while this welding operation was in progress the fire broke out; that it came from the general direction of the gas tank which he had removed from the truck, and that the fire started about twenty feet from where he was at work. He was asked:

"Q. What was there to start it?

"A. I don't know, sir.

"Q. There wasn't anything but the sparks from your welding to start it?

"A. I couldn't tell you.

"Q. Let's see; there wasn't any other fire in the garage?

"A. No, sir; not that I know about."

Evidence of both the plaintiffs and the defendants disclosed that sand properly applied was an approved practice in welding on wooden floors. Other evidence was introduced by the plaintiffs to the effect that asbestos sheets, or metal sheets or benches, were frequently used under such circumstances, and that this was a better practice. There was evidence of a negative character indicating that Tomlinson did not apply sand to the floor but that sand was kept in buckets to be used in the event of fire. This and other evidence as to the cause of the fire and the precautions taken clearly presented a jury question as to whether the care exercised by the defendants on the occasion was reasonable.

This brings us to the question: Was the insurance company

a proper or necessary party to the litigation, and was it prejudicial to the rights of the plaintiffs to have it joined over their objection? It will be remembered that this question arose on the motion of the defendants to require the joining of the insurance company.

After the endorsement had been ordered, over plaintiffs' objection, defendants insisted that the jury be asked on their *voir dire* if they or any of them were employed by, interested in or a policy holder of the State Farm Mutual Automobile Insurance Company. In addition to this, counsel for defendants, in his opening statement to the jury and later in argument, referred to the insurance company.

The exact words employed by counsel in his argument to the jury are not included in the record. The following, however, appears in plaintiffs' motion to set aside the verdict:

"Mr. S. B. Campbell: Your Honor, please, we move to set aside the verdict of the jury and enter up judgment for the plaintiffs notwithstanding the verdict of the jury, because contrary to the evidence and without evidence to support it and because of the argument of counsel which was excepted to by us during the progress of the trial, and because of the requirement that there be endorsed on the motion that the recovery was for in whole or in part the benefit of an insurance company, and particularly in view of the argument made by counsel for the defendants that in this case they were being asked to take money from the pockets of these defendants for an insurance company, which we think was highly prejudicial and which the court ought to have instructed the jury was not any of their concern at this time, and that the endorsement ought not to have been required until after a verdict had been found, and also the argument of counsel which was also excepted to that these defendants had been wiped out and lost everything that they had, which was beyond the evidence. I think your Honor told him to confine himself to the case or something like that.

"The Court: To the evidence.

"Mr. Campbell: I don't think that the admonition of the court was sufficient to overcome the harm that was done, particularly in view of these other facts. Now, your Honor, I don't think we can add anything to what has been said. Your Honor heard the evidence and it was whether the presumption of negligence was overcome.

"Mr. Dillow: There was no exception taken to it at the time it occurred.

"Mr. S. B. Campbell: Yes, there was, we objected.

"The Court: They objected, and I think the Court admonished counsel to keep to the evidence in the case, and I think it stopped there. I will overrule the motion, treating them as a motion in each case.

"Plaintiffs excepted."

█ In this instance there was no allegation of an assignment to the insurance company, and no facts are disclosed from which such an assignment could be inferred. The effect of introducing the insurance company in this manner was prejudicial to the rights of the plaintiffs. The defendants could in no way be prejudiced thereby until they had some notice of an assignment, and in that event adequate legal remedies were available to them.

As stated by Judge Moncure in *Clarksons* v. *Doddridge,* 14 Gratt. (55 Va.) 42: "The defendants are in no danger of being compelled to pay the money into the wrong hands. They have an ample remedy to prevent that; * * *. Their remedy is by motion. If they really apprehended that the action was not brought by or for the use of the new Commissioners, and that the old Commissioners are fraudulently attempting to recover and collect the money for their own use, they can, by motion, obtain a rule requiring the new Commissioners to avow and prosecute, or to disavow and dismiss the action."

█ We do not intend to imply that it is not permissible in some instances to join as parties plaintiff an assignee. (*Norfolk, etc., R. Co.* v. *Jones,* 183 Va. 536, 32 S. E. (2d) 720). The history of the statute (Code, 1950, § 8-94), however, shows that it was enacted primarily for the benefit, convenience and protection of the plaintiff or an assignee of the plaintiff, and not for the benefit or protection of the defendant whose rights are amply safeguarded. A reading of the following cases will tend to show the purpose of the legislation (Code, 1950, § 8-94, *supra*): *Fadeley* v. *Williams,* 96 Va. 397, 31 S. E. 515; *Smith* v. *Virginia Ry., etc., Co.,* 144 Va. 169, 131 S. E. 440; *Virginia Elec., etc., Co.* v. *Mitchell,* 159 Va. 855, 164 S. E. 800, 167 S. E. 424; *Dillow* v. *Stafford,* 181 Va. 483, 25 S. E. (2d) 330.

It was not necessary to require the endorsement on the notices of motion for judgment. If the defendants felt that

they needed protection the endorsement could have been demanded after the verdicts had been returned.

Crabtree and Miller had a right to bring these suits in their own names. They had the right to have the factual issues decided by a jury free from influences with which it was not concerned.

This holding is in keeping with a pattern laid down by the legislature. At the 1948 session, § 8-96 of the 1950 Code was amended by the addition of this sentence: "Nothing in this section shall be construed to permit the joinder, or addition as a new party, of any insurance company on account of the issuance to any party to a cause of any policy or contract of liability insurance, or on account of the issuance by any such company of any policy or contract of liability insurance for the benefit of or that will inure (to) the benefit of any party to any cause."

While the quoted sentence relates to liability insurance policies, the reasoning which prompted the amendment applies with equal force here.

█ It follows, therefore, that it was error in this instance for the court to join the insurance company over the objection of the plaintiffs. The error is made plain by what transpired during the progress of the trial.

For the reasons stated the judgments are reversed, the verdicts set aside, and the cases remanded for a new trial not inconsistent with the views herein expressed.

*Reversed and remanded.*