## Staunton

JOSEPH B. HUDGINS, ET AL., EXECUTORS v. RANDOLPH F. JONES, ET
AL.

September 11, 1964.

Record No. 5761.

Present, All the Justices.

*Evans B. Jessee (Arthur E. Smith*, on brief), for the plaintiffs in error.

*S. D. Roberts Moore (Gentry, Locke & Rakes*, on brief), for the defendants in error.

I'Anson, J., delivered the opinion of the court.

Plaintiffs, Joseph B. Hudgins and E. Claude Pace, Jr., executors of the estate of Maxwell S. Hudgins, deceased, filed this suit in equity against the defendants, Randolph F. Jones, Jr., and Allstate Insurance Company, Jones' insurance carrier, to obtain contribution under § 8-627[1], Code of 1950, 1957 Repl. Vol., for one-half of the amount Fidelity and Casualty Company of New York, Hudgins' insurance carrier, paid to Margaret Meade Wagoner as a compromise settlement for injuries she received in an automobile collision involving cars operated by Hudgins and Jones.

Allstate Insurance Company's motion to abate the suit as to it was sustained and it was dismissed as a party defendant. On motions of the other defendant, Jones, the trial court ordered that the caption of the case be changed so as to add the language, "for the use and benefit of Fidelity and Casualty Company of New York," to the designation of the plaintiffs, and that the cause be transferred to the law side of the court.

The case was tried by a jury, and at the conclusion of all of plaintiffs' evidence the trial court sustained a motion to strike plaintiffs' evidence and entered summary judgment for Jones. We granted plaintiffs a writ of error.

Plaintiffs contend that the trial court erred in (1) striking their evidence; (2) dismissing Allstate Insurance Company as a party defendant; (3) ordering the name of Fidelity and Casualty Com-

---

1. 8-627. *When contribution among wrongdoers enforced.*—Contribution among wrongdoers may be enforced when the wrong is a mere act of negligence and involves no moral turpitude.

pany of New York to be included in the caption of the case; (4) transferring the cause to the law side of the court; and (5) admitting certain evidence.

In determining whether the trial court erred in striking out all of the plaintiffs' evidence, we must consider their evidence very much as on a demurrer to the evidence. The plaintiffs are entitled to the benefit of all inferences which a jury might fairly draw from the evidence, and if several inferences may be drawn from the evidence, though they may differ in degree and probability, we must adopt those most favorable to the plaintiffs, unless they be strained and forced or contrary to reason. *Smith* v. *New Dixie Lines*, 201 Va. 466, 470, 111 S. E. 2d 434, 437; *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 2d 821, 825.

Thus the evidence, stated in the light most favorable to the plaintiffs, is as follows:

The collision occurred on November 24, 1959, at about 10:50 A.M., at the intersection of Hershberger road and State route 626, in Roanoke county, Virginia. Hershberger road is a two-lane, blacktop highway and runs generally east and west. Route 626 intersects it from the north at right angles and forms a "T" intersection. From the crest of a hill which is from 200 to 240 feet east of the intersection, Hershberger road runs downhill to the intersection. There is a slight curve in the road at the crest of the hill.

Maxwell S. Hudgins was operating a 1956 Cadillac automobile east on Hershberger road and was in the act of turning left into route 626 when a 1953 Ford, operated by the defendant Jones, proceeding west on Hershberger road, skidded into the right side of the Hudgins vehicle, knocking it onto the embankment on the north side of Hershberger road, west of the intersection. The Jones car turned completely around in the highway and came to rest heading east in the eastbound lane. The Hudgins car was a total loss, and the entire front of the Jones car was damaged.

Jones, called as an adverse witness, testified that he traveled Hershberger road two to four times a day; that he was familiar with the road and its intersection with route 626; that "it's very dangerous, and very bad all the way through"; that at the point of collision the visibility is poor; that he was traveling at a speed of 35 to 40 miles per hour when he came over the crest of the hill; and that it was raining when the collision occurred. He said that he saw the Hudgins automobile when he came over the crest of the hill; that there is a slight curve on the crest of the hill and "you can't see a

car until you are almost in the straight part of it"; that when he first saw the Hudgins car he was approximately 200 feet away from the intersection; that at that time "Mr. Hudgins' automobile was in the process, the way it appeared to me, of making the turn. He was over the white line"; and that "his left front wheel had made a turn and had crossed the middle white line." He further said that he took his foot off the accelerator and when he realized the Hudgins car was turning into route 626, he applied his brakes, and his car skidded into it. He could not say how far he was from the Hudgins car when he applied his brakes.

Mrs. Hudgins, who was riding in the front seat with her husband, testified that his car was moving slowly when he started making the left turn; that she then saw the Jones vehicle coming over the hill and she exclaimed, "Oh, Max," whereupon Mr. Hudgins speeded up in an effort to clear the intersection.

Margaret Meade Wagoner, who was riding in the back seat of the Hudgins car, testified that she had no recollection of the collision other than that the Hudgins automobile was hit a hard blow. She was allowed to state, over objection of the plaintiffs, that while she was in the hospital for treatment of the injuries sustained in the accident, Mr. Hudgins told her that when he saw the Jones car coming he was in the turn, and he "froze and just couldn't move a muscle."

Mr. Hudgins died approximately two months after the collision from causes apparently not connected with the accident.

One of the investigating officers testified that Jones told him he saw the Hudgins car "making or fixing to make" a left turn but there was nothing he could do but to run into it. He also said that the impact between the two cars was so great that it knocked the back window out of the Hudgins car.

Another one of the investigating officers testified that the driver of an automobile coming over the crest of the hill would have a clear view of an automobile making a left turn into the intersection for approximately 240 feet. He could not find any visible skid marks made by the Jones car because it was raining.

Defendants do not question the $15,000 paid to Mrs. Wagoner in settlement of the damages for her injuries, nor the propriety of the settlement made by Fidelity and Casualty Company of New York, but they refused to contribute one-half of the amount of the settlement on the grounds that Jones was free of negligence and that the sole proximate cause of the collision was the gross negligence of Hudgins.

The plaintiffs conceded in their bill of complaint that Hudgins was guilty of gross negligence, but they say that their evidence made out a prima facie case of concurring negligence on the part of Jones, which proximately contributed to Mrs. Wagoner's injuries, in that he drove his automobile at a dangerous and excessive rate of speed and failed to keep his car under proper control, considering the known hazards of the road and the weather conditions then existing, and that the trial court should have permitted the jury to determine the questions presented.

Negligence and proximate cause are usually questions for a jury. They become questions of law for the court only when reasonable men may not differ as to the conclusion of fact to be drawn from the evidence, or the weight to be given the testimony. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850, 853; *Standard Oil* v. *Williams*, 202 Va. 362, 366, 117 S. E. 2d 93, 95.

We have many times said that proper speed is in a large measure governed by conditions existing at the time. *Richmond Greyhound Lines, Inc.* v. *Brown*, 203 Va. 950, 954, 128 S. E. 2d 267, 270; *Carroll* v. *Miller*, 175 Va. 388, 400, 9 S. E. 2d 322, 327.

The evidence shows that Jones was thoroughly familiar with Hershberger road at the point of the collision, having traveled over it two to four times each day, and from common experience he should have anticipated that a car might be making a left turn at the intersection. When he reached the crest of the hill approximately 200 feet from the intersection he saw the left front wheel of the Hudgins car across the white center line of the highway, indicating to him that it was in the act of making a left turn at the intersection. Yet he traveled an undetermined distance downhill toward the intersection before applying his brakes and then skidded into the heavy Cadillac automobile with such force that it was knocked onto an embankment west of the intersection and completely demolished. It is true Jones testified that he was traveling at a speed of 35 to 40 miles per hour, which was within the legal limit, but proper speed is to be determined by the conditions then existing. It was raining, visibility was poor, and the blacktop road was wet. Whether he was traveling at an excessive rate of speed, with knowledge of the hazards of the road and the weather conditions, or had his automobile under proper control, are questions upon which reasonable men may disagree. Hence whether Jones was guilty of concurring negligence, which was a proximate or contributing cause of the accident, was a factual question for the jury and not one of law for

the court. Cf. *Noland* v. *Fowler*, 179 Va. 19, 25, 18 S. E. 2d 251, 254.

This conclusion calls for reversal of the case and a new trial, but we shall deal with the other assignments of error to remove them as issues upon a retrial in the court below.

■ We find no error in the action of the court in sustaining Allstate's motion to abate the action and dismiss it as a party defendant.

The question as to whether Jones carried automobile liability insurance which covered him, if it be determined that he was guilty of concurring negligence which proximately contributed to Mrs. Wagoner's injuries, is immaterial in the present case. There were no allegations in plaintiffs' bill that a judgment had been obtained against it or its insured, Jones. Any liability that the insurance company may have to any of the parties to this suit exists only by virtue of its policy of insurance issued to Jones and is purely contractual. Under the terms of the insurance contract, the company had no liability to pay damages until it had been determined that Jones was negligent in the operation of his car and that such negligence was a contributing or concurring cause of the collision.

The case of *American Employers' Ins. Co.* v. *Maryland Casualty Co.*, 218 F. 2d 335, relied upon by the plaintiffs for making Allstate a party, is not controlling here. There liability of the insured had already been determined and the insurer refused to pay its insured's share of the joint judgment because of a policy defense. In the present case the liability of Jones, Allstate's insured, had not been determined. Thus the action of the plaintiffs in making Allstate a party defendant to this proceeding was premature.

■ It was not error for the trial court to require plaintiffs to show in the caption of the case that this suit for contribution was brought by the plaintiffs for the use and benefit of Fidelity and Casualty Company of New York.

The right to contribution is not a personal right of the tort-feasor but is a chose in action to which the insurer may be subrogated. *Nationwide Mutual Ins. Co.* v. *Jewel Tea Co., Inc.*, 202 Va. 527, 530, 531, 118 S. E. 2d 646, 648; *McKay* v. *Citizens Rapid Transit Co.*, 190 Va. 851, 859, 59 S. E. 2d 121, 124, 20 A. L. R. 2d 918.

Plaintiffs specifically alleged in their bill that the insurance company had paid the compromise settlement to Mrs. Wagoner and that this suit was for the use and benefit of the Fidelity and Casualty Company of New York. It was. thus obvious from the pleadings

that Fidelity and Casualty Company of New York was a real party in interest. Cf. *Miller* v. *Tomlinson*, 194 Va. 367, 372, 373, 73 S. E. 2d 378, 381, 382.

Plaintiffs next say that the trial court erred in transferring this suit for contribution from the equity side of the court to the law side.

The doctrine of contribution is founded on principles of equity and natural justice, and the general rule appears to be that when parties are bound to bear a burden, and are liable from the same circumstances existing as to both, contribution is a matter of right in equity. The one exception to the rule is when the party who otherwise would be entitled to contribution forfeits his right where the joint liability arose out of an act involving moral turpitude or a voluntary tort. *Thweatt's Adm'r* v. *Jones Adm'r, Etc.*, 1 Rand. (22 Va.) 328, 10 Am. Dec. 538; *Wayland* v. *Tucker*, 4 Gratt. (45 Va.) 267, 50 Am. Dec. 76; 4 Mich. Jur., Contribution, § 22, p. 527.

This appeared to be the established rule in Virginia until 1909 when this Court held, in *Walton, Witten & Graham* v. *Miller*, 109 Va. 210, 63 S. E. 458, 132 Am. St. Rep. 908, that the right of contribution did not exist among joint tort feasors. This holding was repeated in many other cases. *Virginia Railway & Power Co.* v. *Hill*, 120 Va. 397, 404, 91 S. E. 194, 197; *Palmer* v. *Showalter*, 126 Va. 306, 318, 101 S. E. 136, 140; *Norfolk and Southern Railroad Co.* v. *Beskin*, 140 Va. 744, 746, 747, 125 S. E. 678, 679; *Norfolk and Portsmouth Belt Line Railroad Company* v. *Parker*, 152 Va. 484, 505, 147 S. E. 461, 467.

However, this rule was abrogated when the Code of 1919 was revised and § 5779 was enacted to permit contribution among wrongdoers when the wrong was a mere act of negligence and involved no moral turpitude. Michie's Virginia Code of 1942, § 5779. This section has remained unchanged and is now § 8-627, Code of 1950, 1957 Repl. Vol. Thus the statute revived, in effect, the judicial pronouncement in *Thweatt's, supra*, and reinstated the general rule that contribution is a matter of right in equity, heretofore stated. 4 Mich. Jur., Contribution, § 22, p. 527. See also 47 W. Va. L. Q. 123.

Courts of equity have not been ousted of their jurisdiction in cases of this character on account of the assumption thereof by law courts. Their jurisdiction is considered to be concurrent. The remedy existing at law is usually resorted to when the case is not complicated and such remedy does not affect the more extensive and efficient

jurisdiction of a court of equity. *Wayland* v. *Tucker, supra;* 13 Am. Jur., Contribution, § 69, pp. 62, 63.

While the right to enforce contribution originally belonged to courts of equity on general principles of justice, jurisdiction to proceed in courts of law to enforce contribution is well recognized in some cases, but equity retains such original jurisdiction and will take jurisdiction when to do so will avoid a multiplicity of suits, or where the relief at law would be incomplete or inadequate. *Cooper* v. *Greenberg*, 191 Va. 495, 501, 61 S. E. 2d 875, 878. See *Norfolk & Portsmouth Belt Line Railroad Co.* v. *Parker, supra,* 152 Va. at pp. 504, 505, 147 S. E. at p. 467; and *Coca-Cola Bot'lg Works* v. *Andrews,* 173 Va. 240, 250, 3 S. E. 2d 419, 423.

In the present case the issue to be determined was whether Jones was guilty of concurring negligence which proximately contributed to Mrs. Wagoner's injuries. Traditionally, such issues are tried in a court of law under proper instructions. Moreover, there were no equitable issues involved in the present case. Hence the trial court did not abuse its discretion in transferring the suit to the law side of the court.

Mrs. Wagoner's testimony that Hudgins told her he "froze" when he saw the Jones car was clearly hearsay, but it would have been admissible as a statement against interest if the negligence of Hudgins had been an issue in this case. However, it was conceded in plaintiffs' bill of complaint that Hudgins was guilty of gross negligence. Thus it was improper to admit the evidence complained of. While we do not consider the admission of the testimony in evidence reversible error, it should not be admitted on another trial of the case.

Moreover, Mrs. Wagoner's testimony did not help Jones' case because Hudgins' negligence would not relieve him of the duty to operate his automobile at a reasonable speed and to keep his car under proper control.

For the reasons stated, the judgment of the court below is reversed and the case remanded for a new trial.

*Reversed and remanded.*